## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| VENOCO, LLC, *et al.*, | ) | Case No. 17-10828 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| EUGENE DAVIS, in his capacity as | ) | |
| Liquidating Trustee of the Venoco | ) | |
| Liquidating Trust, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 18-50908 (KG) |
| | ) | |
| STATE OF CALIFORNIA, and CALIFORNIA | ) | |
| STATE LANDS COMMISION, | ) | |
| | ) | |
| Defendants. | ) | **Re:  D.I. 8 and 12** |

# **OPINION**

The issue before the Court is jurisdiction.  Does the Court which presided over Debtors'[1] Chapter 11 bankruptcy case and entered the Order which confirmed the plan of liquidation have jurisdiction to decide a post-confirmation dispute in an adversary proceeding?  Jurisdiction is the seminal question in every case and sometimes the final question.  Here, the Court is satisfied that it has jurisdiction, and it will not abstain from hearing the adversary proceeding for reasons which follow.

---

[1] Debtors are: Venoco, LLC, TexCal Energy (LP) LLC, Whittier Pipeline Corporation, TexCal Energy (GP) LLC, Ellwood Pipeline, Inc. and TexCal Energy South Texas, L.P.

## FACTS[2]

The Debtors filed their bankruptcy petitions on April 17, 2017 (the "Petition Date"). The Court entered its Order confirming Debtors' Plan of Liquidation (the "Plan") on May 23, 2018, and the Plan became effective on October 1, 2018. Complaint, ¶¶ 21-23. On October 16, 2018, the day after the Plan became effective, the Liquidating Trustee (the "Trustee") on behalf of the Liquidating Trust (the "Trust"), filed Plaintiff's Original Complaint for Inverse Condemnation (the "Complaint") as an adversary proceeding. The Trustee named as defendants the State of California (the "State") and California State Lands Commission (the "Commission," and collectively with the State, the "Defendants").

Debtor Venoco LLC ("Venoco") was a party to leases with the Defendants for drilling rights in the South Ellwood Field ("SEF") off the coast of California. Venoco owned Platform Holly, an offshore oil platform which it used to conduct drilling operations in the SEF. *Id.*, ¶ 2. An onshore facility known as the Ellwood Onshore Facility ("EOF")[3], was used to process oil and gas from Platform Holly. *Id.*, Exhibit E, Attachment 1. The EOF is located on land approximately 2.8 miles north of Platform Holly. Platform Holly and the EOF are integrated components of the oil production in the SEF. *Id.*, ¶¶ 24-35.

---

[2] For purposes of deciding the motions to dismiss, the Court will accept all of the factual allegations in the Complaint – not conclusions – as true and construe the Complaint in the light most favorable to plaintiff. *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210 (3d Cir. 2009).

[3] The EOF is situated on a triangular-shaped .46 acre site which Venoco acquired from Mobil Oil Company in 1997. *Id.*, ¶ 24.

Now, the integrated components are needed to plug and abandon the Platform Holly wells. *Id.*, Exhibit A, page 2. On April 17, 2017, Debtors quitclaimed the SEF Leases back to the Commission and thereby relinquished all of their right, title and interest in the SEF. The relinquishment included Platform Holly. *Id.*, ¶ 2. Afterwards, Debtors no longer had an interest in the SEF Leases, the wells or the real property underlying the SEF Leases. *Id.* The Commission then became responsible for decommissioning Platform Holly and the SEF. *Id.* The Commission could seek to recover the costs from Debtors' estate, or perhaps from predecessors who had operated the SEF such as ExxonMobil Corporation. *Id.*

Three days before the quitclaims, Venoco and the Commission entered into a Reimbursement for Temporary Services Agreement ("RTSA") which provided that the Commission would reimburse Venoco for the cost to operate the SEF Leases on an interim basis and the Commission received access and use rights to the EOF. *Id.*, ¶ 3. The RTSA terminated on September 15, 2017, and Debtors transitioned the operations of the SEF to the Commission's third-party contractor. *Id.*

After the RTSA terminated, Venoco and the Commission entered into an agreement (the "Gap Agreement") giving the Commission the temporary use of the EOF to continue to decommission Platform Holly and the SEF. *Id.*, ¶ 4. The Commission agreed to pay Venoco for its use of the EOF. Later, by its terms, Debtors terminated the Gap Agreement, as amended, effective October 15, 2018, and initiated the adversary proceeding the next day. *Id.* The Defendants have not fully paid Debtors for Defendants'

3


use and occupancy of the EOF, which in part led to Debtors filing the instant adversary proceeding. *Id.*, Exhibit D.

It appears that any interruption in the maintenance and operation of the EOF is a threat to the public health, safety and the environment. *Id.*, ¶ 5. The substantive issue in the adversary proceeding is whether the Commission has the right to continue occupying and using the EOF without buying it from or paying rent to Debtors.

## DISCUSSION

On their face, the Defendants' motions to dismiss misleadingly appear to be straightforward and uncomplicated. The plaintiff is the post-confirmation Trustee who is asserting the Trust's state law claims of inverse condemnation.[4] Further, the defendants are the State of California, which appears to be clothed in sovereign immunity, and one of its agencies. The Court would readily dismiss the adversary proceeding were it not for the facts that the adversary proceeding is an *in rem* matter and that the Commission, on behalf of the State, has filed a proof of claim with the Court seeking approximately $130 million. The Trustee is seeking "just compensation" for the taking of the EOF and, by necessity, the proof will require a fair market valuation. Further, the adversary proceeding is an *in rem* proceeding. *See, e.g., U.S. v. 645 Acres of Land*,

---

[4] "Inverse condemnation" is a term describing the situation in which the government takes but does not pay for private property. The "condemnation" is inverse because it is the reverse of the normal situation where the government is the plaintiff and the land owner is the defendant. "An inverse condemnation action is a constitutionally adequate procedure for obtaining just compensation when the government seizes property without initiating formal condemnation procedures." *Peduto v. City of North Wildwood*, 878 F. 2d 725, 728 (3d Cir. 1989).

409 F. 3d 139, 145-46 3d Cir. (2005) (condemnation proceedings are *in rem*). Therefore, a closer look is warranted.

The Defendants make several arguments in support of their position that the Court lacks subject matter jurisdiction over Debtors' adversary proceeding.

1. The Court does not have jurisdiction over the State because of the Eleventh Amendment to the Constitution of the United States (the "Constitution") and sovereign immunity.

2. The Court lacks "arising" in or "related to" jurisdiction.

3. Jurisdiction is lacking for "just compensation" under the Fifth Amendment to the Constitution and Section105(a) of the Bankruptcy Code.

4. The Trustee failed to complete his state law remedies.

5. The Court should decline to exercise jurisdiction.

Finally, if they do not prevail on the jurisdiction defenses, Defendants argue that the Complaint fails to state a claim.

The Court is satisfied that it has subject matter jurisdiction, sovereign immunity does not apply or Defendants have waived sovereign immunity, the other defenses are unremitting and Debtors have stated a claim in the Complaint. The Court will discuss those issues and others within. First, the Court will address Defendants' Eleventh Amendment arguments.

### The Eleventh Amendment – Sovereign Immunity

The Eleventh Amendment to the Constitution of the United States provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The principal modern case which addresses the Eleventh Amendment and sovereign immunity held that a statute which permitted Indian tribes to sue states in federal court was unconstitutional. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The Supreme Court held that "[e]ven when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states." *Id.* at 72. Should Congress wish to enact a statute to end sovereign immunity that a state enjoys, it must do so by an unequivocal expression that it intended to overturn immunity, and must be acting pursuant to a valid grant of power in the Constitution. *Seminole Tribe*, 517 U.S. at 72-73.

Section 106 of the Bankruptcy Code provides that "sovereign immunity is abrogated as to a governmental unit" with respect to many sections of the Bankruptcy Code. While it would appear that Section 106 defeats many claims of sovereign immunity, the Third Circuit disagrees. In a carefully written opinion, the Third Circuit ruled that Section 106 is unconstitutional. *See Sacred Heart Hospital v. Dep't of Public Welfare* (*In re Sacred Heart Hospital*), 133 F. 3d 237, 243 (3d Cir. 1998). Accordingly, Section 106 is unavailable to support Debtors' case against the State.

Earlier this year, Chief Judge Christopher S. Sontchi of the Delaware Bankruptcy Court, issued a "scholarly opinion" with "intricate dissection"[5] of the law in which he clarified the intersection of bankruptcy law and sovereign immunity. *See In re La Paloma Generating Company*, 588 B.R. 695 (Bankr. D. Del. 2018). The Court reads *La Paloma* and Chief Judge Sontchi's careful analysis of Supreme Court and Third Circuit precedents to stand for the proposition that the *in rem* jurisdiction of the bankruptcy court defeats a claim of sovereign immunity. *Id.*, 588 B.R. at 727-32. The condemnation case is an *in rem* proceeding to which the Court's jurisdiction attaches. *Peduto*, 878 F. 2d at 728.

There are several other reasons which cause the Court at the motion to dismiss stage to deny dismissal on account of sovereign immunity. First, the Commission and the State are both at risk for liability because the Commission was acting on behalf of the State.[6] At this early stage before there has been any discovery, the Court views the State and the Commission as one and the actions of the Commission are attributable to the State. Second, the Commission filed a $130 million proof of claim in the bankruptcy case for matters related to the Defendants' abandonment of Platform Holly and the EOF. It is impossible to make sense of proceeding with the Defendants' claim in Delaware and the inverse condemnation case proceeding across the country in California. Third, this is an

---

[5] The quoted words are the view of William Rochelle, Editor at Large of the American Bankruptcy Institute. The praise appears in Mr. Rochelle's August 1, 2018 column. The Court fully agrees with Mr. Rochelle's assessment.

[6] *See, e.g.*, *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 468 n. 3 (1970) (the State of California acted through the State Lands Commission); *State of California ex rel. State Lands Comm'n v. County of Orange*, 134 Cal. App. 3d 20, 22 (1982) (making reference to the State of California acting through the State Lands Commission).

7

inverse condemnation case. Governmental bodies (and often states) are natural parties in such suits given the very nature of the action. *See*, *e.g.*, *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001). For these reasons, sovereign immunity does not command the Defendants' dismissal.

## Jurisdiction

The State and the Commission have raised several jurisdiction related defenses which the Court will now address.

    a.    <u>Core "Arising In" Jurisdiction</u>

Case law has greatly clarified the principles of core – "arising in" and non-core – "related to" jurisdiction. The State and the Commission argue that neither principle applies to them. The Court disagrees. There are many decisions which address the issues. One of the leading decisions on the history of confirmation, releases and jurisdiction can be found in this district from the learned and thorough decisions in *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252 (Bankr. D. Del. 2017), *aff'd*, 591 B.R. 559 (D. Del. 2018). In *Millenium*, the bankruptcy court and the district court on appeal discussed at length bankruptcy jurisdiction and core and non-core jurisdiction and the effectiveness of non-consensual third-party releases. The bankruptcy court and the district court agreed that the bankruptcy court had jurisdiction to grant third-party releases.

Core versus noncore and "arising in" and "related to" principles were fully addressed by the Third Circuit in *Resorts Int'l, Inc. v. Price Waterhouse & Co., LLP* (*In re*

*Resorts Int'l, Inc.*), 372 F. 3d 154 (3d Cir. 2004)[7]. *Resorts* explains that bankruptcy courts have jurisdiction over cases under title 11, matters arising under title 11, proceedings which arise in a case under title 11 and proceedings which are related to a case under title 11. *Id.* at 162. The first three categories are considered core, and those in the final category are considered non-core. In *Resorts*, the Third Circuit held that:

1.  A core proceeding raises rights which the Bankruptcy Code enumerates or which by their very nature would only arise in a bankruptcy case. *Id.* at 162-163, citing *Torkelson v. Maggio*, (*In re the Guild and Gallery Plus, Inc.*) 72 F. 3d 1171, 1178 (3d Cir. 1996). The Third Circuit noted that 28 U.S.C. § 157(b)(2) provides examples of core proceedings, including proceedings that affect the liquidation of assets of the estate. *Resorts*, 372 F. 3d at 162. The Third Circuit further explained that a core proceeding "'invokes a substantive right provided by title 11'" or one that "'by its nature could only arise in the context of a bankruptcy case.'" *Id.*, 372 F. 3d at 162-63, *quoting In re Guild & Gallery Plus*, 72 F. 3d at 1178, *quoting In re Marcus Hook Dev. Park, Inc.*, 943 F. 2d 261, 264 (3d Cir. 1991).

2.  Bankruptcy courts have jurisdiction if the outcome could "conceivably have an effect on the bankruptcy estate. *Id.* at 164. A matter of this nature is "related to" the bankruptcy case. *See Pacor, Inc. v. Higgins*, 743 F. 2d 984, 994 (3d Cir. 1984). The Third Circuit stated that:

> With "related to" jurisdiction, Congress intended to grant bankruptcy courts "comprehensive jurisdiction" so that they could "deal efficiently and expeditiously" with matters connected with the bankruptcy estate.

---

[7] In *Resorts*, the issue was whether post-confirmation the bankruptcy court had jurisdiction over an accounting malpractice case.

*Resorts*, 372 F. 3d at 163-64, *citing Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) which in turn, quoted *Pacor*, 743 F. 2d at 994. One of these "effects" is a challenge to the fundamental integrity of the bankruptcy process. *See Emerald Cap. Advisors Corp. v. Karma Automotive, LLC* (*In re FAH Liquidating Corp.*), 567 B.R. 464 (Bankr. D. Del. 2017), in which the Court found that "arising in" jurisdiction applied because the claims suggested an issue with the integrity of the bankruptcy process.

3.  Bankruptcy courts have jurisdiction if the proceeding could "conceivably" have "any effect" on the bankruptcy estate and its administration, *quoting Pacor*, 743 F. 2d at 994.

4.  After plan confirmation, jurisdiction is more tenuous but "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Resorts*, 372 F. 3d at 166-67.

The Trustee argues that the Court has core, "arising in" jurisdiction by virtue of the "intimate connection between this [Adversary] Proceeding and the underlying bankruptcy." Plaintiff's Answering Brief, page 20. For this proposition, the Trustee alleges that: (1) Defendants' actions gave Debtors no option except to protect their estate and (2) Defendants actively participated in and availed themselves of the Court and its processes. The Trustee asserts that the adversary proceeding addresses the administration of the estate and is therefore one of the "core" categories under 28 U.S.C. § 157(b)(2)(A). Next, the Trustee claims that Defendants continuing occupation and use of the EOF frustrates the liquidation of the estate's assets which qualifies as "core" under

28 U.S.C. § 157(b)(2)(A).  Finally, the Trustee's Complaint constitutes a counterclaim which qualifies it for core treatment pursuant to 28 U.S.C. § 157(b)(2)(C).

The Defendants answer the Trustee's arguments by arguing themselves that the inverse condemnation action (1) belongs in state court, (2) is not a proceeding seeking to enforce or interpret a Plan provision, and (3) is not a counterclaim or in the nature of a counterclaim.

The Court turns to decisional law and concludes that the adversary proceeding is core.  The *Resorts* decision backs the Court's conclusion.  Surely the adversary proceeding is not collateral to the bankruptcy case, it is directly relevant to the Defendants' proof of claim.  *Resorts* decided that the proceeding in question was not core because it would have only an incidental effect on the reorganized debtor.  *Resorts*, 372 F. 3d at 169.  Here, the Defendants' proof of claim and the adversary proceeding have an enormous affect on Debtors' estate.  Further, and unlike *Resorts*, although the potential to add to the Trust's assets "does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation," (*id.* at 170), the adversary proceeding certainly and strongly bears weight on the Defendants' proof of claim.  Although the quoted language refers to non-core "related to" jurisdiction, the point to be made also applies to "arising in" jurisdiction.

The adversary proceeding will not simply increase the Trust's assets if successful.  Instead, the Trustee seeks either to compel a resolution of the ownership of the EOF or as a counter to Defendants' proof of claim.  Estate counterclaims against persons filing claims is a category enumerated as providing core "arising in" jurisdiction.  In *Penson*

*Technologies LLC v. Schonfeld Grp. Holdings LLC* (*In re Penson Worldwide*), 587 B.R. 6, 12-13 (Bankr. D. Del. 2018), a matter recently decided, a creditor filed a proof of claim based on a contract, to which the debtor filed an adversary proceeding. The creditor-defendant asked the court "to dismiss the matter, enforce a forum selection clause, abstain or otherwise transfer the case to a court in New York." 587 B.R. at 8. The court held that an adversary proceeding based on the same contract was a core proceeding under 28 U.S.C. § 157(b)(2)(C) and quoted the Supreme Court, which had written that, "He who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Stern v. Marshall*, 131 S. Ct. 2594, 2616 (2011). It is clear that Defendants have sought the bankruptcy court's assistance and therefore should answer to the Complaint in Delaware bankruptcy court.

*In ResCap Liq. Trust v. PHH Mortg. Corp.*, 518 B.R. 259, 264 (S.D.N.Y. 2014), the district court ruled that an adversary proceeding which the debtor filed in response to a creditor's proof of claim was a counterclaim even though it was based on state – not bankruptcy – law and was not related to the proof of claim.[8] Both *Penson Techs.* and *ResCap* support the Court's finding that the adversary proceeding qualifies as a counterclaim to the Defendants' proof of claim. Therefore, the adversary proceeding is core and will almost certainly be resolved, or is resolvable, in the claim proceeding, i.e., Defendants' $130 million claim arising from Platform Holly and the EOF.

---

[8] For reasons the Court does not find exist here, the district court withdrew the reference and transferred the adversary proceeding from New York to Minnesota.

12

It is for these reasons that the Court deems the adversary proceeding to "arise in" the bankruptcy case and that the Court has jurisdiction. The adversary proceeding draws on rights which in the context of the case could arise only in bankruptcy, has a significant affect on the administration of the estate and, finally, is a counterclaim to Defendants' proof of claim.

      b.    <u>Non-Core "Related To" Jurisdiction</u>

If the Court is mistaken and it does not have core "arising in" jurisdiction, it assuredly has "related to" jurisdiction. The concept of a matter sustaining "related to" jurisdiction is very important in the instant case. If the Trustee is successful in his suit and obtains a judgment, it would assuredly impact the outcome of the Defendants' proof of claim proceeding and any distribution to creditors, thus establishing that the adversary proceeding bears a close nexus to the Plan and to the administration of the estate. The test for "related to" jurisdiction is that a close nexus exists between the adversary proceeding and the bankruptcy plan. *Resorts*, 372 F. 3d at 166-67. The Third Circuit has ruled that a close nexus exists when the matter at hand affects "the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." *Id.* at 168-69. Here, a decision on the Trust's claims in the Complaint will assuredly affect the administration of the Plan and Trust Agreement. In fact, there is a stark difference between *Resorts* in which the Third Circuit found there was no "related to" jurisdiction and the present adversary proceeding. The litigation trustee filed the malpractice action in *Resorts* almost seven years after the debtor's plan went effective. In the adversary proceeding, the Trustee filed the case

13

within one month of the Plan going effective, which leads the Court to believe that a close nexus exists between the adversary proceeding and the Plan.

In addition, helpful in the Court's thinking is the Supreme Court's decision in *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25 (2014). There, a bankruptcy trustee sued under a fraudulent transfer theory to recover commissions paid to a noncreditor. The issue the Supreme Court addressed was how courts should proceed when they encounter a non-core claim. In discussing the differences between core and non-core claims, the Supreme Court ruled that with respect to noncore claims, a bankruptcy court can adjudicate such claims provided it issues proposed findings of fact and conclusions of law which a district court then reviews *de novo*. In other words, even a bankruptcy court's proposed findings of fact and conclusions of law in a non-core proceeding can be rectified by the district court's review and treatment of a decision as proposed findings of fact and conclusions of law. *Id.*, 573 U.S. at 39-40.

## Other Arguments

Defendants make other arguments why the Trustee's adversary proceeding is futile.

a. Failure to State a Claim

In short, Defendants argue that the Trustee has failed to state a claim because the State and the Commission are separate entities and he has not pleaded a taking or damaging of the EOF. The Defendants argue that the Complaint must therefore be dismissed.

The Court finds that the Trustee has borne the burden which the Supreme Court established in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and the Third Circuit in *Fowler*, 578 F. 3d at 210. The Trustee has stated in short and plain statements the plausible claim that Defendants are responsible for the inverse condemnation of the EOF such that discovery may establish the elements that Defendants complain do not appear in the Complaint. Further, the Third Circuit stated in a two-part test in applying *Iqbal*:

> First, the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a [court] must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

*Fowler*, 578 F. 3d at 210-11. The Trustee has adequately stated plausible claims and is entitled to establish the validity of the claims through discovery and, if necessary, through trial.

b. <u>Failure to Exhaust State Law Remedies</u>

Defendants argue that the Trustee cannot pursue his claim for just compensation, citing *Williamson County Regional Planning Comms'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985). The Supreme Court held on the facts of *Williamson County* that until a land owner used a state's procedure, he could not claim the absence of just compensation. But as the Trustee counters, *Williamson County*[9] was not a bankruptcy case

---

[9] The Trustee wrote that the requirements in *Williamson County* and "forcing a plaintiff to pursue piecemeal litigation or manipulation by defendants might weigh against applying *Williamson*," citing *Knick v. Twp. of Scott*, 862 F. 3d 310, 327 (3d Cir. 2017), *cert. granted in part sub nom. Knick v. Twp. Of Scott, P.A.*, 138 S. Ct. 1262 (2018). Trustee's Brief, page 18.

and to find that the Trustee has not exhausted his state court remedies would deprive the Trustee of his choice of forum. In *PVI Assocs. v. Redevelopment Corp.* (*In re PVI Assocs.*), 181 B.R. 210, 218 (Bankr. E.D. Pa. 1995), the court did not apply *Williamson County*. The Court denied a motion to dismiss an inverse condemnation case in which the defendant argued that debtor failed to exhaust state remedies. Defendants counter that other courts have continued to follow *Williamson County* – but do not cite a case from the Third Circuit. Defendants also argue that *PVI* was decided as it was because dismissal could have affected debtor's reorganization while here the Court has already confirmed the Plan. The Court is satisfied on balance that the Court does not have the basis to deny the Debtors their choice of forum based upon *Williamson County* to which there are questions of its reliability and impact. Accordingly, the Trustee was not required to exhaust state procedures.

    c. <u>Police Powers</u>

The State argues that the California Police Powers Doctrine bars the adversary proceeding because a valid exercise of the State's police powers *often* (not *always*) does not require compensation even if the State damages the property. The State cites *Customer Co. v. City of Sacremento*, 10 Cal. 4th 368, 383 (Cal. 1995). Cases, however, establish that the Police Powers doctrine applies only in narrow circumstances and when government acts because of "public necessity and to avert impending peril." *See Holtz v. Superior Court of San Francisco*, 3 Cal. 3d 296, 305. Whether the Defendants' use of the EOF satisfies the test is an issue of fact which the Court is fully capable of determining.

Abstention

The judicially created doctrine of "abstention" dictates that a federal court will decline to exercise its jurisdiction and will defer to a state court which will then have the opportunity to decide the issue. The Court recognizes that abstention is an extraordinary exception to its responsibility to rule on matters before it. The Court is therefore generally reluctant to abstain from a case properly before it. The instant matter represents a unique set of facts upon which the Court bases its decision not to abstain.

The applicable statute is 28 U.S.C. § 1334(c)(1) which states:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Court considers twelve factors in determining whether or not to abstain. The factors are:

(1) the effect or lack thereof on the efficient administration of the estate if the Court abstains;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

*DHP Holdings II Corp. v. Peter Skop Industries, Inc.*, (*In re DHP Holdings II Corp.*) 435 B.R. 220, 223-24 (Bankr. D. Del. 2010). Evaluating the factors is not "merely a mathematical exercise." *Id.* at 234, quoting from *Trans World Airlines, Inc. v. Karabu Corp.* (*In re Trans World Airlines, Inc.*) 196 B.R. 711, 715 (Bankr. D. Del. 1996). Of the twelve factors, most important are (1) the effect on the administration of the estate, (2) whether the claim involves only state law issues, and (7) whether the proceeding is core or non-core. *See, e.g.*, *Fruit of the Loom, Inc. v. Magnetek, Inc.* (*In re Fruit of the Loom, Inc.*), 407 B.R. 593, 600 (Bankr. D. Del. 2009).

In evaluating the factors, it is clear to the Court that some of the factors favor the Trustee while others favor Defendants. The Court will not just mathematically add the factors to determine the party which has the most factors in their column. Instead, the Court will take into consideration and discuss what it considers to be the more important factors in this case.

1. <u>Effect on Administration of the Estate if the Court Abstains</u>

This factor clearly weighs in the Trust's favor and against abstention. The Defendants have a claim pending and the Trustee has the adversary proceeding which, if successful, will negate some or all of the claim.

18

2. <u>Extent to Which State Law Issues Predominate Over Bankruptcy Issues</u>

Clearly, state law issues predominate, which favors the Defendants. The Court is, however, very accustomed to deciding state law issues which somewhat reduces the significance of this factor.

3. <u>Core v. Non-Core Status</u>

The Court has found that the adversary proceeding is core which therefore gives the advantage to Debtors. However, even if the adversary proceeding is non-core, the relationship to the Chapter 11 case is such strength that the advantage remains with Debtors.

4. Degree of Relatedness or Remoteness of the
   <u>Adversary Proceeding to the Main Bankruptcy Case</u>

There is a close relationship between the adversary proceeding and the main bankruptcy case, which favors not abstaining.

5. <u>Commencement in Bankruptcy Court Involves Forum Shopping</u>

The Court is of the view that many, if not most, filings involve forum shopping. Parties file cases where they think they will do best. Here, however, the Court is satisfied that the Trustee filed the adversary proceeding in the bankruptcy court because there was a case and a proof of claim already present here. The Court finds that the Trustee did not forum shop when he filed here. This factor favors the Trustee.

6. <u>The Existence of a Right to Jury Trial</u>

It is not clear that the right to a jury trial of the adversary proceeding exists because it is a core proceeding. If, however, the District Court should withdraw the reference, it

is beyond a mere possibility that the District Court would direct the Court to oversee pretrial matters.  This factor is a draw.

The Court will not abstain.  After analyzing all of the twelve factors and especially the factors it considers most important, the Court concludes that it would be inappropriate to abstain.  The Penson court stated the Court's conclusion very aptly when it wrote:

> Fundamentally, this adversary proceeding involves an objection to a proof of claim. That it involves resolution of state law issues is thus unremarkable. The state law issues are not complex, and judicial economy suggests that the objection to the proof of claim and Plaintiff's counter-claims — which are inextricably interlinked with Defendant's proof of claim — be resolved by one court. That court should be the bankruptcy court as the claim allowance process is a quintessential bankruptcy court function. None of the factors that favor abstention convince me that, in this particular case, the interests of justice merits a different outcome. As a result, I decline to abstain.

*Penson*, 587 B.R. at 24.  The Court could not state its conclusion any better.

## CONCLUSION

The Court finds that it has jurisdiction over the adversary proceeding.  The Court will also not abstain.  The parties should commence their discovery promptly, because the Court has scheduled trial to begin on March 19, 2019.


Dated:  January 2, 2019               _____
                                      KEVIN GROSS, U.S.B.J.

20