IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| IN RE VENOCO, LLC, *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 17-10828-JTD |
| Debtors. | : | (Jointly Administered) |

| STATE OF CALIFORNIA, | : | Civ. No. 19-mc-07-CFC |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | |
| EUGENE DAVIS, in his capacity as | : | |
| Liquidating Trustee of the Venoco | : | |
| Liquidating Trust, | : | |
| Appellee. | : | |

| CALIFORNIA STATE LANDS | : | Civ. No. 19-mc-11-CFC |
| COMMISSION, | : | |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | |
| EUGENE DAVIS, in his capacity as | : | |
| Liquidating Trustee of the Venoco | : | |
| Liquidating Trust, | : | |
| Appellee. | : | |

## **MEMORANDUM OPINION**

January 3, 2020
Wilmington, Delaware

*Cohn F. Connolly*
_____
CONNOLLY, UNITED STATES DISTRICT JUDGE

The Liquidating Trustee of the Venoco Liquidating Trust filed this post-confirmation adversary proceeding in the Bankruptcy Court against the State of California and the California State Lands Commission (collectively, "the State Defendants"). The two-count Complaint alleges "inverse condemnation" claims under the Takings Clauses of the United States and California Constitutions (Count I) and § 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a) (Count II). Adv. D.I. 1 ¶¶ 35–41.[1] Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant." *United States v. Clarke*, 445 U.S. 253, 257, 100 S. Ct. 1127, 63 L.Ed.2d 373 (1980) (quoting D. Hagman, Urban Planning and Land Development Control Law 328 (1971)). It "stands in contrast to direct condemnation, in which the government initiates proceedings to acquire title under its eminent domain authority." *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2168 (2019).

---

[1] The docket of the Chapter 11 cases, captioned *In re Venoco, LLC*, No. 17-10828-JTD, is cited herein as "B.D.I. __." The docket of the adversary proceeding, captioned *Davis v. State of California*, Adv. No. 18-50908-JTD, is cited herein as "Adv. D.I. __." The Appendix to Trustee's Memorandum of Law Opposing Each Appellant's Appeal Regarding Sovereign Immunity (19-mc-07-CFC D.I. 35) is cited herein as "B__."

The State Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b).  Adv. D.I. 8; Adv. D.I. 12.  In support of their motions, they argued, among other things, that the claims were barred by the State Defendants' sovereign immunity.  The Bankruptcy Court denied their motions to dismiss.  *In re Venoco, LLC*, 596 B.R. 480 (Bankr. D. Del. 2019).

The sole issue in this appeal is whether the Bankruptcy Court erred in rejecting the State Defendants' sovereign immunity arguments.  By separate Memorandum Order, I denied the State Defendants' requests for leave to appeal on an interlocutory basis the other rulings made by the Bankruptcy Court in denying the motions to dismiss.  Civ. No. 19-463-CFC, D.I. 37.

I have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(3) and *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc*, 506 U.S. 139, 143–44 (1993) (holding that Eleventh Amendment sovereign immunity is an immunity from suit, the denial of which is appealable as a collateral order).  As I am assessing the merits of a Rule 12(b)(6) motion to dismiss, I accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the Liquidating Trustee.  *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).  I have considered in addition to the Complaint only "document[s] integral to or explicitly relied upon" in the Complaint, *Schmidt v.*

2

*Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks omitted); any

"undisputedly authentic document" attached as an exhibit to the motions to dismiss

if the Trustee's claims are based on the document, *Pension Ben. Guar. Corp. v.*

*White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); and "any matters

incorporated by reference or integral to the claim[s], items subject to judicial

notice, [and] matters of public record," *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d

256, 260 (3d Cir. 2006). I have ignored the substantial portions of both sides'

briefing in which facts not set forth in documents meeting these criteria are recited

and argued. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426

(3d Cir. 1997) (A district court "may not consider matters extraneous to the

pleadings" when ruling on a motion to dismiss.).

## I.  BACKGROUND

Venoco was the principal debtor in the Chapter 11 case from which this

adversary proceeding arose. The other debtors were affiliates of Venoco. As the

parties do not distinguish Venoco from the other debtors either individually or

collectively, I will refer to the debtors collectively as Venoco.

Venoco was an oil and gas company that operated the Platform Holly

drilling rig in the South Ellwood Oil Field off the coast of Santa Barbara,

California. It held rights, title, and interests to wells in the South Ellwood Field by

virtue of certain leases (the SEF leases) it obtained from Mobil Oil Company in

1997. The SEF leases were issued by the State of California, acting by and through the Lands Commission.

Venoco processed the oil and gas it obtained from Platform Holly at the Ellwood Onshore Facility (the EOF), which sits on a half-acre lot on the California coast about three miles north of the platform. Venoco held title to the EOF and the air permits necessary to use the EOF.

Venoco's economic demise can be traced to 2015, when a ruptured pipeline cut off the only conduit for the Platform Holly's oil to get to market. Adv. D.I. 1 ¶ 26. The pipeline rupture and subsequent refusal of the Land Commission to allow Venoco to pursue alternative means to extract and process oil from the South Ellwood Field led to Venoco's filing for bankruptcy on April 17, 2017. *Id.* That same day, Venoco quitclaimed its SEF leases, thereby relinquishing its rights, title, and interests in the South Ellwood Field, including its ownership of the Platform Holly. *Id.* ¶ 2. As a result of that relinquishment, the Land Commission became responsible for decommissioning the Platform Holly and plugging the abandoned wells in the South Ellwood Field. *Id.*

The decommissioning of an oil platform and the plugging of offshore wells are expensive undertakings fraught with safety and environmental hazards. To facilitate an orderly and safe transition of the South Ellwood decommissioning and plugging operations to a third-party contractor designated by the Land

4

Commission, Venoco and the Land Commission entered into an Agreement for Reimbursement of Temporary Services on the eve of Venoco's bankruptcy. Adv. D.I. 1-1. The reimbursement agreement provided in relevant part that the EOF was "necessary for the continued operation and anticipated plugging and abandonment" of the SEF leases and that the Land Commission would pay Venoco approximately $1.1 million a month to operate the Platform Holly, South Ellwood wells, and EOF in a safe and responsible manner until the new contractor designated by the Land Commission was ready to assume operational control.

On September 15, 2017, the third-party contractor took over the decommissioning and plugging operations, and the reimbursement agreement was terminated. Adv. D.I. 1 ¶ 28. At that point, Venoco and the Land Commission entered into a "Gap Agreement" pursuant to which the Land Commission agreed to pay Venoco $100,000 per month for the non-exclusive access and use of the EOF. *Id.* ¶ 29.

Under the terms of the SEF leases and California law, the Land Commission has the right to obtain reimbursement for its decommissioning and plugging efforts from Venoco and from Venoco's predecessor lessees, including Mobil Oil (and Mobil's successor-in-interest, Exxon Mobil). Accordingly, on October 13, 2017, the Land Commission filed a proof of claim with the Bankruptcy Court for an estimated $130 million contingent claim against Venoco for the recovery of

amounts the Land Commission will have incurred in plugging the South Ellwood wells and decommissioning the Platform Holly and other facilities used to extract and process oil and gas from the wells during the plugging process. B001682. The contingent claim included $29 million to $35 million for the cost to operate and maintain the EOF in connection with the plugging and decommissioning efforts. B001751.

On May 23, 2018, the Bankruptcy Court entered an order confirming Debtor's Plan of Liquidation, effective as of October 1, 2018. As part of the Plan and the Litigation Trust Agreement it incorporates, the Court created a Liquidating Trust and transferred to that Trust assets (the Liquidating Trust Assets) from the bankruptcy estate. Those assets include the EOF and any claims Venoco had against the State Defendants. The Bankruptcy Court appointed Plaintiff to serve as the Liquidating Trustee and ordered him to "collect[ ], hold[ ], distribut[e] and liquidat[e] the Liquidating Trust Assets for the benefit" of Venoco's creditors that filed claims against the bankruptcy estate and "to otherwise administer[ ] the wind-down" of the estate. B.D.I. 879-1, Liquidating Trust Agreement at 2; B.D.I. 893, Notice of Appointment of Liquidating Trustee; B.D.I. 922-1, Combined Disclosure Statement and Plan, Art. XI.C. (governing "Rights, Powers and Duties of the Debtors and Liquidating Trustee"); id., Art. XIII.D (governing "Payments and Distributions for Disputed Claims"); B.D.I. 922, Confirmation Order ¶¶ 10-11).

6

In the months leading up to confirmation, Venoco "sought to negotiate with the [Land Commission] for a purchase price and ultimate disposition of the EOF, its equipment, and [environmental] permits." Adv. D.I. 1 ¶ 30. The Land Commission, however, refused to purchase these assets and also refused to pay Venoco the amounts it owed Venoco under the Gap Agreement. *Id.* On August 22, 2018, Venoco notified the Land Commission that it intended to terminate the Gap Agreement on October 15, 2018 if certain conditions, including the payment of $950,000 in past due payments under the Gap Agreement and "substantial progress towards settlement" of the parties' outstanding claims against each other were not met. *Id.* ¶ 31.

On October 1, 2018, the Plan became effective and the EOF, its permits, and Venoco's potential claims against the State Defendants were transferred to the Liquidating Trust. On October 15, 2018, the Gap Agreement was terminated.

The State Defendants have informed the Liquidating Trustee that they will not compensate the Liquidating Trust for their use of the EOF but will "remain on the EOF under the veil of police powers authorizing them to take actions necessary to protect the environment." *Id.* ¶ 1. The State Defendants intend to use the EOF over the next five years to process and sell for tens of millions of dollars the oil and gas obtained during their decommissioning and plugging efforts. *Id.* ¶¶ 33, 34.

On October 16, 2018, the Liquidating Trustee filed the Complaint and

thereby initiated this adversary proceeding. The Liquidating Trustee alleges in the

Complaint that the State Defendants' continued use of the EOF constitutes a taking

under the United States and California Constitutions and that the Liquidating Trust

is therefore entitled to "just compensation, including the fair market and fair rental

value of the EOF, its equipment, its permits and [the State] Defendants' special use

and operations thereon." *Id.* ¶ 37. By its Complaint, the Liquidating Trustee

seeks "to maximize [the] distributable value" of the Liquidating Trust "in

accordance with" the Plan. *Id.* ¶ 41.

The State Defendants filed motions to dismiss to the Complaint. The

Bankruptcy Court denied the motions. The Court based its decision in relevant

part on its conclusion that "the *in rem* jurisdiction of the bankruptcy court defeats a

claim of sovereign immunity." *Venoco,* 596 B.R. at 487.

## II. DISCUSSION

The State Defendants make two arguments on appeal. First, they argue that

they are immune from suit in federal court under the Eleventh Amendment of the

United States Constitution. 19-mc-07-CFC, D.I. 32 at 13. The Amendment

literally reads: "The Judicial power of the United States shall not be construed to

extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State"; but the Supreme Court has extended the Amendment's reach to

cover suits by in-state plaintiffs, *Hans v. Louisiana*, 134 U.S. 1, 14-15, 20 (1890), and thus the Amendment bars all private suits against non-consenting States in the federal courts.

Second, the State Defendants contend that they enjoy "substantive immunity" under the California Tort Claims Act that extends "beyond" their Eleventh Amendment immunity.

**A. Standard of Review**

A district court "review[s] [a] bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir. 1998) (citation omitted). The district court "review[s] de novo whether an entity is entitled to sovereign immunity." *Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019) (citation omitted).

**B. Eleventh Amendment Immunity**

The State Defendants' argument that they are entitled to Eleventh Amendment immunity is foreclosed by the Supreme Court's decision in *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006). The Court held in *Katz* that "[i]n ratifying the Bankruptcy Clause [of the Constitution], the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem*

9

jurisdiction of the bankruptcy courts." *Id.* at 378. *See also id.* at 373 ("Insofar as orders ancillary to the bankruptcy courts' *in rem* jurisdiction, like orders directing turnover of preferential transfers, implicate States' sovereign immunity from suit, the States agreed in the plan of the [Constitutional] Convention not to assert that immunity."); *id.* at 377 ("[The] States agreed in [ratifying] the plan of the [Constitutional] Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to Laws on the subject of Bankruptcies." (internal quotation marks and citation omitted)). As the four dissenters noted in *Katz*, the Court's majority "f[oun]d[ ] a surrender of the States' immunity from suit in Article I of the Constitution, which authorizes Congress '[t]o establish … uniform Laws on the subject of Bankruptcies throughout the United States[,]'" *id.* at 381 (quoting U.S. Const. Art. I § 8, cl. 4), and thus the majority's opinion "ma[d]e[ ] clear that *no action* of Congress is needed [to abrogate the States' sovereign immunity in bankruptcy proceedings] because the Bankruptcy Clause itself manifests the consent of the States to be sued[,]" *id.* at 383 (emphasis in original).

In this case, the Litigation Trustee's inverse condemnation claims effectuate the Bankruptcy Court's *in rem* jurisdiction. The Trustee brought the claims to fulfill his obligations under the Court-ordered Plan to collect and liquidate the Trust's assets for the benefit of Venoco's creditors and to administer the wind-

down of the bankruptcy estate. B.D.I. 879-1 at 2. Thus, the claims affect directly

the administration and distribution of the res—the core of the Bankruptcy Court's

*in rem* jurisdiction.

The State Defendants argue that "[a]lthough a State's sovereign immunity

may be abrogated by Congress in narrow circumstances, . . . the Third Circuit has

held that the purported abrogation of state sovereign immunity contained in 11

U.S.C. § 106(a) was beyond Congress's power under the Bankruptcy Clause." 19-

mc-07-CFC D.I. 32 at 14 (citing *Sacred Hart Hosp. v. Dep't of Pub. Welfare*, 133

F.3d 237, 245 (3d Cir. 1998)). But this argument misses the point. It is true that

the Third Circuit held in *Sacred Heart*—eight years before *Katz*—that Congress's

attempt to abrogate States' sovereign immunity pursuant to § 106(a) was

unconstitutional. *Id.*[2] But *Katz* made the question of Congressional abrogation

irrelevant. The Court was explicit in *Katz* that the States waived their sovereign

immunity by ratifying the Bankruptcy Clause in the Constitution. Thus, as the

dissent in *Katz* noted, "*no action* of Congress is needed" to abrogate the States'

sovereign immunity in bankruptcy proceedings. *Katz*, 546 U.S. at 383 (emphasis

in original).

The State Defendants next argue that inverse condemnation claims are "for

---

[2] Section 106(a) provides that "[n]otwithstanding an assertion of sovereign
immunity, sovereign immunity is abrogated as to a governmental unit to the extent
set forth in this section with respect to" certain sections of the Bankruptcy Code.

dollars, not particular dollars," and thus such claims are not *in rem* and not subject to *Katz*. 19-mc-07-CFC D.I. 32 at 17–18. But whether the inverse condemnation claims themselves are *in rem* is of no moment. The relevant question is whether the claims are asserted in proceedings that are ancillary to or give effect to the bankruptcy court's *in rem* jurisdiction. *See Katz*, 546 U.S. at 373 ("Insofar as orders ancillary to the bankruptcy courts' *in rem* jurisdiction . . . implicate States' sovereign immunity from suit, the States agreed in the plan of the [Constitutional] Convention not to assert that immunity."). As the Court explained in *Katz*:

> The ineluctable conclusion[ ] . . . is that [the] States agreed in the [ratification of the] plan of the [Constitutional] Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to "Laws on the subject of Bankruptcies." The scope of this consent was limited; the jurisdiction exercised in bankruptcy proceedings was chiefly *in rem*—a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other kinds of jurisdiction. But while the principal focus of the bankruptcy proceedings is and was always the res, some exercises of bankruptcy courts' powers—issuance of writs of habeas corpus included—unquestionably involved more than mere adjudication of rights in a res. In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.

546 U.S. at 377–78 (citations omitted).

Lastly, quoting *In re Resorts International, Inc.*, 372 F.3d 154, 165 (3d Cir.

2004), the State Defendants argue that there is no res connected to this post-confirmation adversary proceeding because "[t]he debtor's estate ceases to exist once confirmation has occurred." 19-mc-07-CFC D.I. 32 at 17 (quoting *Resorts Int'l,* 372 F.3d at 165). But this quotation from *Resorts International* is misleadingly truncated and taken out of context. The Third Circuit expressly held in *Resorts International* that "post-confirmation bankruptcy jurisdiction is normally appropriate" when the asserted claims have "a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement." 372 F.3d at 168–69; *see also id.* at 165 (noting that "[a]*t its most literal level*, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred[,] but that "courts *do not usually apply* [that] test *so literally* as to entirely bar post-confirmation bankruptcy jurisdiction") (emphasis added).

In this case, the claims have the requisite close nexus to the bankruptcy plan. Under the express terms of the court-ordered Plan and the Liquidating Trust Agreement it incorporated, the Liquidating Trustee is obligated to collect, hold, and distribute the estate's assets—including the EOF and its permits and Venoco's claims against the State Defendants—for the benefit of the estate's creditors. The

13

Complaint thus implements, executes, and, if successful, will consummate the Plan. Thus, the claims asserted in the adversary proceeding are directly connected to the res that lies at the heart of the Bankruptcy Court's jurisdiction. Accordingly, under *Katz*, the Complaint is not barred by Eleventh Amendment immunity.[3]

### C. Immunity under The California Tort Claims Act

The State Defendant next argue that the California Tort Claims Act affords them "substantive immunity from liability" that "exists independent of constitutional protections relating to federal jurisdiction." 19-mc-07-CFC D.I. 32 at 27. The State Defendants are correct that substantive immunity from liability is distinct from the jurisdictional immunity conferred by the Eleventh Amendment. *See Lombardo v. Pennsylvania, Dept. of Public Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) ("We can discern two distinct types of state sovereign immunity: immunity from suit in federal court and immunity from liability"); *id.* at 194–95 ("[I]mmunity from suit in the federal courts[] [is] also known as Eleventh Amendment immunity."). But the State Defendants did not argue before the Bankruptcy Court that the Complaint should be dismissed based on sovereign

---

[3] Because I agree with the Bankruptcy Court's determination that Eleventh Amendment sovereign immunity does not bar the Liquidating Trustee's claims, I need not address, and express no opinion with respect to, the parties' arguments regarding whether the State Defendants waived Eleventh Amendment immunity by filing their $130 million claim and participating in the bankruptcy proceedings. 19-mc-07-CFC D.I. 32 at 19–26; *id.*, D.I. 34 at 25–44.

14

immunity derived from the California Tort Claims Act (or any other source of state law). Accordingly, they have waived the issue and I may not consider it on appeal. *In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005) ("[W]hen a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal.").

I do not agree with the State Defendants' argument that the issue of substantive immunity is "jurisdictional and may be raised at any time, including on appeal." 19-mc-07-CFC D.I. 32 at 27. Although "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court[,]" *Edelman v. Jordan*, 415 U.S. 651, 677–78 (1974), the question of a state's substantive immunity from liability does not similarly implicate the jurisdiction of federal courts. The question raised by substantive immunity from liability is whether the state has agreed to subject itself to liability. The question raised by Eleventh Amendment immunity is whether the state has consented to be sued in a federal court. The latter, to use the State Defendants' words, affords "constitutional protection[] relating to federal jurisdiction," 19-mc-07-CFC D.I. 32 at 27. That jurisdictional bar is "separate and distinct" from sovereign immunity from liability. *Lombardo* 540 F.2d at 199. Accordingly, having failed to raise the issue of substantive immunity from liability with the Bankruptcy Court, the State Defendants have waived their right to argue the issue

on appeal.[4]

## III.   CONCLUSION

For the reasons discussed above, I will affirm the Bankruptcy Court's denial

of the State Defendants' motion to dismiss.

The Court will issue an Order consistent with this Memorandum Opinion.

---

[4] I note nonetheless for the benefit of the parties on remand that the Court held in *Katz* that "[i]n ratifying the Bankruptcy Clause [of the Constitution], the States acquiesced in a subordination of *whatever sovereign immunity they might otherwise have asserted* in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." 546 U.S. at 378 (emphasis added). Thus, the Court did not limit its holding to Eleventh Amendment immunity.