# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VENOCO, LLC, *et al.*,<br><br>　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No. 17-10828 (JTD)<br><br>(Jointly Administered) |
| EUGENE DAVIS, in his capacity as Liquidating Trustee of the Venoco Liquidating Trust,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, and CALIFORNIA STATE LANDS COMMISSION,<br><br>　　　　　　　Defendants. | Adv. Proc. No. 18-50908 (JTD) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INVERSE CONDEMNATION

Eugene Davis, solely in his capacity as Liquidating Trustee (the "Liquidating Trustee," or "Plaintiff") of the Venoco Liquidating Trust (the "Liquidating Trust"), hereby files this First Amended Complaint for inverse condemnation damages against the State of California (the "State") and California State Lands Commission (the "SLC," and, together with the State, the "Defendants"), and in support respectfully represents as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Venoco, LLC (3555); TexCal Energy (LP) LLC (0806); Whittier Pipeline Corporation (1560); TexCal Energy (GP) LLC (0808); Ellwood Pipeline, Inc. (5631); and TexCal Energy South Texas, L.P. (0812) (collectively, the "Debtors"). The mailing address for the Venoco Liquidating Trust, for purposes of these chapter 11 cases, is: 5 Canoe Brook Drive, Livingston, NJ 07039.

**PRELIMINARY STATEMENT**

1. By this action, Plaintiff seeks fair and just compensation for Defendants' continued occupancy and special use of the Ellwood Onshore Facility (as described in detail below, the "EOF"). Defendants' special use of the EOF is for decommissioning Platform Holly and the South Ellwood Field (the "SEF"), which began on September 15, 2017 and continues to this day. Defendants have failed to pay the Trust for their use of the EOF which is a violation of the California Constitution and the United States Constitution. Defendants claim that their rent-free occupancy of the EOF is justified by their police power to protect the environment because of Defendants' assertions that an environmental hazard exists at the EOF. But rather than shut-in the EOF facility, Defendants will continue to specially use the EOF, its equipment, and permits to indefinitely support Defendants' plugging and abandonment and decommissioning at offsite oil and gas wells in the SEF owned and operated by Defendants. In so doing, Defendants are processing, and upon Plaintiff's information and belief, commercially selling hydrocarbons and gases produced from the offsite wells. Defendants seek to unfairly advance their own financial interests by tying up a valuable Liquidating Trust Asset to the detriment of Plaintiff, the Liquidating Trust, and its beneficiaries—the creditors in these chapter 11 cases who are entitled to the remaining recoveries from the disposition of the Liquidating Trust Assets following payment of administrative and convenience claims. Defendants' pursuit of their agendas amounts to a taking under applicable federal and state law, and unjustly enriches Defendants at the expense of Plaintiff, the Liquidating Trust, and its beneficiaries.

**INTRODUCTION**

2. This dispute traces back to before the Debtors filed bankruptcy. Before commencing these Chapter 11 cases, the Debtors placed assets in the SEF in a condition for plugging and abandoning. On April 17, 2017, Debtors quitclaimed their SLC Leases Nos. PRC

3242.1 and 3120.1, which are located in the SEF (these, collectively with all of the Debtors' other legacy leases associated with the SEF, the "SEF Leases"), thereby relinquishing all of their rights, title, and interests in the SEF, including their ownership of Platform Holly, an offshore platform used to conduct drilling operations in the SEF. Pursuant to the terms of the SEF Leases, relinquishment of the SEF Leases was effective upon receipt by the SLC, which receipt was acknowledged by the SLC prior to the filing of the Debtors' bankruptcy petitions. Accordingly, as of the Petition Date (as defined below), the Debtors had no possessory or ownership interest in the SEF Leases, the wells, or the real property underlying the SEF Leases. Pursuant to California's oil and gas laws, as of the relinquishment date, the SLC became responsible for decommissioning Platform Holly and the SEF, subject to (a) its ability to recover against the financial assurance put in place by Venoco pursuant to applicable law, and (b) the SLC's rights to hold predecessor operators of the SEF, including Venoco's direct predecessor in interest, Mobil Oil Corporation (which has since been succeeded by Exxon Mobil Corporation, or "ExxonMobil"), responsible for the decommissioning.

   3. Pursuant to a Reimbursement for Temporary Services Agreement (the "RTSA"), attached hereto as **Exhibit A**, entered into between Venoco and SLC three days before the quitclaims were made effective, SLC agreed to reimburse Venoco for the reasonable cost to continue operating the SEF Leases on an interim basis, and SLC received non-exclusive access and use rights to the EOF Properties. As anticipated by Venoco and the SLC, on September 15, 2017, the RTSA terminated and the Debtors safely transitioned operations of the SEF to SLC's third-party contractor.

4.     Concurrently with the termination of the RTSA, Venoco entered into a "gap" agreement (as amended, the "Gap Agreement")[2] with the SLC on September 15, 2017, to allow the SLC to continue its temporary, non-exclusive use of the EOF as the SLC continued its efforts to decommission Platform Holly and the SEF. Through the Gap Agreement, the SLC agreed to pay a reasonable, to-be-determined rental value for the SLC's continued use of the EOF. The SLC also agreed to pay Venoco non-refundable monthly payments for the SLC's continued non-exclusive use of the EOF. The Gap Agreement expressly provides that the monthly payments were not intended to be payment in full for the SLC's use of the EOF, but only interim payments that would be "caught up" when there was a final agreement or a court decision determining the amount for the SLC's use of the EOF. The Gap Agreement was to remain in effect through May 31, 2018, and on a month-to-month basis thereafter, provided that either party could unilaterally terminate the month-to-month use of the EOF upon prior written notice of 45 days. The Debtors timely notified SLC of their intent to terminate the Gap Agreement on the Termination Date (as defined below) if certain conditions were not met,[3] and the Gap Agreement accordingly terminated on the Termination Date, October 15, 2018. The SLC failed to negotiate in good faith to determine and pay reasonable payment amount for the SLC's use of the EOF as required by the Gap Agreement. Instead, the SLC refused to make any payments and notified the Trust that it intended to continue to use and occupy the EOF indefinitely.

5.     As of the filing of this First Amended Complaint, Defendants continue to use and occupy the EOF without paying Plaintiff just compensation for such use. Defendants have articulated two reasons for their behavior. First, it is Defendants' belief that an interruption in

---

[2] The original Gap Agreement is attached hereto as **Exhibit B**, and the fourth and final amendment thereto is attached hereto as **Exhibit C**.

[3] The Debtors' letter of intent regarding terminating the Gap Agreement is attached hereto as **Exhibit D**.

5

their daily maintenance and operation of the EOF would threaten the public health and safety of California citizens. Second, it is Defendants' belief that their past payments constitute just compensation for their continued and prospective occupancy and use of the EOF. Plaintiff denies that Defendants' presence at the EOF is necessary to avert any emergency or threat to public health, safety, or the environment at the EOF. By virtue of Venoco's planned quitclaim of the SEF Leases, which was accomplished in coordination with the SLC, any risk to public health, safety, or the environment related to plugging and abandonment or decommissioning of Platform Holly or the SEF are the responsibility of the SLC or the predecessors-in-interest to the SEF Leases, and alternatives to Defendants' uncompensated taking of the EOF exist to appropriately prevent or mitigate such risks. In addition, Plaintiff opposes Defendants' special use of the site to continue satisfying their obligations related to decommissioning Platform Holly and the SEF without paying just compensation to Plaintiff to the significant detriment of the Liquidating Trust and its beneficiaries. Although the Debtors and Plaintiff have engaged in negotiations with Defendants regarding Defendants' payment of just compensation for their ongoing occupancy and special use of the EOF, discussions have not yielded a consensual resolution. As such, Plaintiff brings this adversary proceeding for inverse condemnation and just compensation to recover damages for Defendants' inequitable conduct.

## PARTIES AND SERVICE

6.  Plaintiff is Eugene Davis, solely in his capacity as the Liquidating Trustee of the Liquidating Trust.

7.  The Liquidating Trust is organized under the laws of the State of Delaware and may be served pursuant to Federal Rule of Civil Procedure 5(b)(1), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7005, through the undersigned counsel who have appeared in this adversary proceeding.

8. The Liquidating Trust holds legal title to the Liquidating Trust Assets, including, inter alia, the EOF, the onshore oil and gas processing facility located at 7979 Hollister Avenue, Goleta, California. The EOF comprises the physical facility, as well as other tangible and intangible, real and personal property associated with the facility, including but not limited to an office building, equipment, pipelines, piers, access roads, firewater lines, appurtenances, and other property; permits, easements, licenses, rights-of-way and other rights relating to access, operation, and maintenance of the facility; and other items, both tangible and intangible in nature, related to the facility.

9. At all times herein mentioned while Defendants have had access to, occupied or possessed, or used the EOF, the EOF was and is owned in fee simple by Venoco or the Liquidating Trust, as Venoco's successor in interest.

10. Defendant State is, and at all times herein mentioned, was a public entity organized and existing under the Constitution and laws of the State of California, which is a sovereign State of the United States of America and may be served pursuant to Federal Rule of Civil Procedure 5(b)(1), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7005, through the State's attorneys of record who have appeared in this adversary proceeding.

11. Defendant SLC is a public commission of the State created under the California State Lands Act of 1938 (the "State Lands Act")[4] and may be served pursuant to Federal Rule of Civil Procedure 5(b)(1), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7005, through the SLC's attorneys of record who have appeared in this adversary proceeding.

---

[4] The State Lands Act was incorporated into the California Public Resources Code in 1941.

12. Defendants possess the power of eminent domain under Article I, Section 19 of the Constitution of California. Defendant SLC additionally possesses the power of eminent domain pursuant to California Public Resources Code §§ 6808–6810.

## JURISDICTION AND VENUE

13. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

14. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

15. The matter set forth herein is a core proceeding pursuant to 28 U.S.C. § 157(b).

16. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

17. The *Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation Proposed by the Debtors* [D.I. 905] ( the "Combined Disclosure Statement and Plan") and the Court's Confirmation Order each expressly provide for this Court to retain jurisdiction over the claims arising herein. *See* CDSP, Art. XIII ("Retention Of Jurisdiction"); Confirmation Order ¶¶ 33–34.

18. Pursuant to Local Rule 7008-1 of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Plaintiff consents to the entry of final orders or a judgment by this Court in this adversary proceeding.

19. Defendants are significant creditors and beneficiaries of the Liquidating Trust, and are interested parties regarding the disposition of the Liquidating Trust Assets. Indeed, Defendants have participated in the administration of these chapter 11 cases. Specifically, Defendants have submitted to the jurisdiction and Constitutional authority of this Court by filing

a proof of claim and by otherwise participating in the administration of these chapter 11 cases.[5] *See Langenkamp v. Culp*, 498 U.S. 42, 44–45 (1990); *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 406 (3d Cir. 2009); *Travellers Int'l AG v. Robinson*, 982 F.2d 96, 98 (3d Cir. 1992).

20.  Under California Government Code § 905.1, Plaintiff was not and is not required to file a claim under the California Government Tort Claims Act because this is an inverse condemnation action filed against public entities pursuant to Article I, Section 19 of the California Constitution.

## PROCEDURAL BACKGROUND

21.  On April 17, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. For the duration of their cases, the Debtors managed their properties and operated their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors was appointed in the chapter 11 cases. The chapter 11 cases are consolidated for procedural purposes only and are administered jointly.

22.  On May 23, 2018, this Court held a hearing on approval of the disclosures in, and confirmation of, the Combined Disclosure Statement and Plan, after which this Court entered the *Order (I) Approving Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation Proposed by the Debtors as Containing Adequate Information on a Final Basis and (II) Confirming Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation Proposed*

---

[5] For example, on October 13, 2017, the SLC filed its proof of claim in the amount of $130 million [POC No. 106], and on August 14, 2017, the SLC filed *California State Lands Commission's Limited Objection to Motion of Aspen American Insurance Company & Aspen Specialty Insurance Company for an Order Granting Aspen: (I) Leave to Exercise its Right of Recoupment, or, to the Extent Necessary, Relief from the Automatic Stay, for "Cause", Pursuant to 11 U.S.C. § 362(d) to Set Off Mutual Pre-Petition Obligations; (II) Adequate Protection as to Certain Surety Bonds, Pursuant to 11 U.S.C. §§ 361, 364(c) or 364 (d), or, Alternatively, (A) Relief from the Automatic Stay, for "Cause", Pursuant to 11 U.S.C. § 362(d) to Cancel Certain Surety Bonds and (B) Requiring the Debtors to Replace Certain Surety Bonds; (III) Waiving the Stay of Fed. R. Bankr. P. 4001(a)(3); and (IV) Such Other or Further Relief as May Be Appropriate; and Declaration of Seth Blackmon* [D.I. 429].

*by the Debtors* [D.I. 922] (the "<u>Confirmation Order</u>")[6], thereby confirming the Combined Disclosure Statement and Plan.

23. On October 1, 2018 (the "<u>Effective Date</u>"), all of the conditions precedent to consummation of the Combined Disclosure Statement and Plan were satisfied or waived and the Combined Disclosure Statement and Plan became effective in accordance with its terms. That same day, the Liquidating Trust was created, the Liquidating Trust Assets were deemed transferred to the Liquidating Trust without further action of any of the Debtors, and the Liquidating Trustee was deemed the judicial substitute for the Debtors in the chapter 11 cases.

## FACTUAL ALLEGATIONS

24. The EOF is situated on a triangular-shaped, 4.46-acre site improved with various fixtures, equipment, and machinery. Venoco acquired the EOF from Mobil Oil Company (predecessor in interest to ExxonMobil) in 1997, and it owned and operated the EOF until the Effective Date, when ownership vested in the Liquidating Trust. Processing equipment at the EOF includes fired heaters, pressure vessels, heat exchangers, compressors, pumps, instrumentation, and thousands of feet of interconnecting pipe. The site also has utilities systems, electrical gear, storage tanks, custody transfer units, and a building that houses the switchgear, as well as a control room, laboratory, offices, and miscellaneous personal property. Additionally, Plaintiff holds and maintains an air permit, Permit No. 7904-R11, issued by the Santa Barbara County Air Pollution Control District for emissions associated with EOF operations (the "<u>Air Permit</u>"). The Air Permit carries significant value because of the time, expense, and risk to obtain it in accordance with applicable law, including the time and expense required to satisfy the California Environmental Quality Act (CEQA). *See* Cal. Pub. Res. 21000 *et seq*.

---

[6] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Confirmation Order or Combined Disclosure Statement and Plan, as applicable.

25. The EOF is located approximately 2.8 miles north of Platform Holly. For years, the Debtors used Platform Holly to operate their 100% working interests in the SEF Leases in the SEF. Produced gas, hydrocarbon liquids, and water are separated on Platform Holly, and the produced gas can either be recompressed for gas-lift or sent to the EOF for processing. Gas from Platform Holly is transported through certain pipelines that connect it to the EOF, where it is then processed and carried to market.

26. The Debtors' operations in the SEF were thwarted in 2015 after the rupture of Plains All American Pipeline Company's Line 901, and even more so after the majority of SLC commissioners announced their public opposition toward the Debtors' Lease Line Adjustment project to increase production in the field. On April 17, 2017, immediately before filing their bankruptcy petitions, the Debtors exercised their quitclaim rights in their SEF Leases, pursuant to which they surrendered all of their rights, title, and interests in the SEF Leases to the SLC in a carefully orchestrated, consensual manner.

27. After the quitclaims became effective, the Debtors had no possessory or ownership interest in the SEF Leases, the wells, or real property underlying the SEF Leases. All such interests reverted to the SLC by operation of the SEF Leases and applicable law.

28. The RTSA, entered into between Venoco and the SLC three days before the quitclaims were filed, obligated (a) Venoco to maintain the necessary permits and ensure continued operation of the SEF and EOF in a safe and responsible manner until a transition of operating responsibilities to a third-party designated by the SLC, and (b) SLC to reimburse Venoco for specific costs to provide such services for a monthly reimbursement prepayment of $1,120,000 (subject to a true-up mechanism and auditing procedures). On September 15, 2017,

the RTSA terminated, and Venoco safely transitioned operations of Platform Holly, the SEF, and the EOF to the SLC's third-party contractor, Beacon West Energy Group, LLC.

29. Upon termination of the RTSA, SLC sought to secure non-exclusive access and special use rights to the EOF. On September 15, 2017, Venoco and SLC entered into the Gap Agreement. The Gap Agreement allowed the SLC to continue its temporary, non-exclusive special use of the EOF in connection with securing, decommissioning and abandoning the quitclaimed offshore facilities, including Platform Holly and the SEF, in exchange for agreed upon use payments from the SLC of $100,000 per month, plus continued reimbursement of Venoco's reasonable expenses. The parties extended the life of the Gap Agreement on four separate occasions, through separate amendments, such that the Gap Agreement would remain in effect through May 31, 2018, and on a month-to-month basis thereafter, provided that either party could unilaterally terminate the month-to-month use of the EOF upon prior written notice of 45 days. Notably, as a condition of the Gap Agreement, the SLC agreed to continue to negotiate in good faith with Venoco regarding a reasonable payment amount for SLC's continued non-exclusive special use of the EOF, and Venoco agreed not to unilaterally seek any modifications to any permits associated with operation of the EOF. The SLC and Venoco agreed that the periodic payments made by the SLC under the Gap Agreement were not intended to be compensation in full for the SLC's use and occupancy of the EOF. Rather, the SLC and Venoco agreed that the SLC's payments were merely interim payments that would be "caught up" when the Parties reached a final agreement or a court determined the amount for the SLC's use of the EOF.

30. Prior to and during the Gap Agreement period, the Debtors sought to negotiate with the SLC for a purchase price and ultimate disposition of the EOF, its equipment, and

permits. Notwithstanding the Debtors' good faith efforts, including their engagement of a qualified, third-party appraiser to develop detailed reports, estimating the value of a portion of the relevant assets, the SLC has refused for more than four years to offer any amount to purchase these assets.

31. On August 22, 2018, the Debtors timely notified SLC of their intent to terminate the Gap Agreement on October 15, 2018 (the "Termination Date") if certain conditions were not met, including payment of past due invoices and substantial progress towards settlement. In total, the SLC incurred a total of $950,000 for its use of the EOF pursuant to the Gap Agreement. In lieu of continuing these payments, the Debtors expressly invited the SLC to make a non-zero offer to purchase the EOF from them. However, in their negotiations leading up to the Termination Date, SLC made it clear that it would no longer pay the Debtors or the Liquidating Trust for its continued special use and occupancy of the EOF, nor offer any amount to purchase the EOF.

32. Despite making the outstanding periodic payments due under the Gap Agreement, Defendants notified the Trust that they intended to remain indefinitely at the EOF, alleging for the first time (despite many months of payments under the Gap Agreement), that they could lawfully do so under their police powers. Accordingly, the Gap Agreement terminated on the Termination Date. Because there is no emergency at the EOF that could justify Defendants' reliance on their police powers, as of October 16, 2018, Defendants have no contractual or other right to occupy or continue specially using the site. Yet, for more than four years, the SLC has continued to occupy and specially use the EOF.

33. Upon information and belief, Defendants are using the EOF in their efforts to satisfy the SLC's obligations to secure, decommission, and abandon Platform Holly and 32 oil

and gas wells. The Defendants' use of the EOF includes use of the communications and utilities at the EOF that serve Platform Holly. Safety monitoring equipment at the EOF also services Platform Holly and the interconnecting pipelines.

34. Pursuant the SLC's regulatory program, Venoco maintained financial assurance to fund its decommissioning obligations. To the extent such financial assurance is inadequate, the SLC has regulatory authority to hold predecessors in interest, including ExxonMobil, responsible. Rather than compel ExxonMobil to undertake the offshore plugging and abandonment and decommissioning work, the SLC entered into an agreement with ExxonMobil on June 29, 2018, under which Exxon will plug and abandon 30 Platform Holly oil wells and 2 onshore wells but disclaim any liability for Platform Holly, the SEF, or the EOF. *See* Phase 1 Agreement between the California State Lands Commission and Exxon Mobil Corporation, attached hereto as **Exhibit E**; *see also City of Goleta Discussion/Action Item Memorandum* dated October, 2, 2018 (the "Goleta Recommendation"), attached hereto as **Exhibit F** along with the *Memorandum of Understanding between the California State Lands Commission Regarding Oil and Gas Facility Jurisdictional Issues* (the "SLC/Goleta MOU").

35. Given the EOF's proximity to Platform Holly, as well as the requisite machinery, equipment, and permits to conduct the necessary decommissioning work, Defendants' uncompensated use of the EOF will save ExxonMobil tens of millions of dollars in decommissioning costs and years of delay they would otherwise incur to develop, permit, and operate an alternate location or vessel to perform these services. Moreover, as evidenced by the Goleta Recommendation, SLC anticipates using the EOF to process hydrocarbons from Platform Holly and carrying the product to market via truck for its own commercial gain.

36. Defendants have asserted their right to occupy and use the EOF pursuant to their police powers. However, while Defendants' police powers may narrowly authorize occupancy to the extent necessary to abate an imminent environmental hazard, it is evident that there is no such hazard at the EOF given that Defendants are not seeking to shut-in the facility. Instead, Defendants will continue to specially use the EOF, its equipment, and permits for approximately another five years to process and commercially sell hydrocarbons and gases produced at offsite oil and gas wells for which Defendants and Plaintiff's predecessors in interest are now responsible. These police powers do not authorize Defendants to take the site for purposes of substantially reducing decommissioning costs and using private property already equipped with the requisite equipment and permits in satisfaction of their plugging and abandonment obligations and for their own commercial gain.

37. Moreover, Defendants, in their regulatory capacity, were responsible for establishing the type and amount of financial assurance required to properly protect the State of California in the event that Venoco was financially unable to fulfill its decommissioning responsibilities in relation to Platform Holly, the SEF and EOF. Venoco's fee simple ownership interest in EOF and its interconnectedness to Platform Holly and the SEF were fully known at the time such financial assurance was established. Defendants also possess legal authority to recover any shortfall between the financial assurance and actual decommissioning costs from prior operators of these assets. Instead, Defendant's special use of EOF seeks to substantially reduce such decommissioning costs to the detriment of the Trust and its beneficiaries. As a fiduciary to other Liquidating Trust beneficiaries, Plaintiff is compelled to seek fair and just compensation for Defendants' public, special use of the EOF.

## CAUSES OF ACTION

### Count I: Inverse Condemnation Against Defendants

38. Plaintiff incorporates by reference paragraphs 1 through 37 as though set forth herein in their entirety in support of its causes of action.

39. Defendants, acting through SLC, committed a *de facto* taking of the EOF for public use without payment of just compensation in violation of Article I, Section 19 of the California Constitution and the Fifth Amendment of the U.S. Constitution. Specifically, by occupying and specially using the EOF without paying just compensation to Venoco or the Trust, Defendants effected a physical invasion of the Liquidating Trust's private property. *See Klopping v. Whittier*, 8 Cal. 3d 39, 46 (1972) (requiring public entity's "physical invasion or direct legal restraint" before a *de facto* taking results) (citing *City of Buffalo v. J.W. Clement Co.*, 28 N.Y.2d 241 (1971)). Additionally, SLC has unequivocally expressed that it intends to remain on the EOF and continue specially using it for its decommissioning efforts, *i.e.*, a public use, without paying just compensation. *See, e.g.*, *Yox v. City of Whittier*, 182 Cal. App. 3d 347, 352 (Cal. Ct. App. 1986) (explaining that "'public use' within the meaning of California Constitution article I, section 19, has been defined as a use which concerns the whole community or promotes the general interest in its relation to any legitimate object of government"); *accord Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 358 (Cal. Ct. App. 1963).

40. As a result of Defendants' taking of the EOF, Plaintiff is entitled to just compensation, including the fair market value and fair rental value, for Defendants' use and occupancy of the EOF, its equipment, its permits, and Defendants' special use and operations thereon.

41.   Plaintiff is further entitled to recover its costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees incurred in connection with this action pursuant to section 1036 of the California Code of Civil Procedure.

### Count II: Just Compensation is Warranted under Section 105(a) of the Bankruptcy Code

42.   Plaintiff incorporates by reference paragraphs 1 through 41 as though set forth herein in their entirety in support of its causes of action.

43.   Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

44.   Plaintiff owes a fiduciary duty to the Liquidating Trust beneficiaries to maximize distributable value in accordance with the Combined Disclosure Statement and Plan. The EOF is a Liquidating Trust Asset that Plaintiff believes may be worth tens of millions of dollars, particularly in light of Defendants' special use thereof. Plaintiff's receipt of just compensation for Defendants' taking would increase the distributable value in the Liquidating Trust and directly inure to the benefit of its beneficiaries. Since the Liquidating Trustee is the successor of the Debtors, and the Liquidating Trust owns the assets of the Debtors' former bankruptcy estates, this Court's adjudication regarding Defendants' taking of the EOF, a key Liquidating Trust Asset, furthers the provisions of the Bankruptcy Code. As such, awarding Plaintiff just compensation for Defendants' taking is necessary and appropriate to carrying out the provisions of the Bankruptcy Code.

### PRAYER

**WHEREFORE**, Plaintiff prays judgment against Defendants, and each of them, as follows:

17

1. For just compensation for the taking of Plaintiff's property for public use, including but not limited to, interest at the market rate (not less than the legal rate) in an amount according to proof;

2. For general and special damages in an amount according to proof;

3. For an award of attorney, appraisal, and engineering fees and costs according to proof;

4. For costs and expenses of the suit herein;

5. For such other relief as the Court deems proper.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: November 22, 2021<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>/s/ *Andrew R. Remming*<br>Robert J. Dehney (No. 3578)<br>Andrew R. Remming (No. 5120)<br>Matthew O. Talmo (No. 6333)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>rdehney@mnat.com<br>aremming@mnat.com<br>mtalmo@mnat.com<br><br>-and-<br><br>**HILL, FARRER & BURRILL LLP**<br>Kevin H. Brogan (admitted *pro hac vice*)<br>One California Plaza<br>300 So. Grand Avenue, 37th Floor<br>Los Angeles, CA 90071-3147<br>Telephone: (213) 620-0460<br>Facsimile: (213) 624-4840<br>kbrogan@hfbllp.com<br><br>-and-<br><br>**BRACEWELL LLP**<br>Bryan S. Dumesnil (*pro hac vice* motion pending)<br>Nancy McEvily Davis (*pro hac vice* motion pending)<br>711 Louisiana, Suite 2300<br>Houston, Texas 77002<br>Telephone: (713)-221-1520<br>Facsimile: (800) 404-3970<br>Bryan.Dumesnil@bracewell.com<br>Nancy.Davis@bracewell.com<br><br>-and-<br><br>Robert G. Burns (admitted *pro hac vice*)<br>Mark E. Dendinger (admitted *pro hac vice*)<br>1251 Avenue of Americas, 49th Floor<br>New York, New York 10020-1104<br>Telephone: (212) 508-6100<br>Facsimile: (212) 508-6101<br>Robert.Burns@bracewell.com<br>Mark.Dendinger@bracewell.com<br><br>-and- |

Jason B. Hutt (admitted *pro hac vice*)
Brittany Pemberton (*pro hac vice* motion pending)
2001 M Street, NW
Washington, District of Columbia 20036
Telephone: (202) 828-5850
Facsimile: (202) 857-2114
Jason.Hutt@bracewell.com
Brittany.Pemberton@bracewell.com
*Counsel for Plaintiff*