## SCHEDULE A

## DEFINITIONS

1.      Notwithstanding anything else to the contrary herein, each word, term, or phrase used in these interrogatories is intended to have the broadest meaning permitted under Rules 26 and 33 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7026, 7033, and 9014. All terms not otherwise defined shall have their ordinary and common meanings.

2.      The term "document" is defined to be synonymous in meaning, and equal in scope, to its usage in Bankruptcy Rule 7034(a) and FRCP 34(a), and includes, without limitation, communications, the drafting, creation, transmittal, receipt or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, such as e-mails, text messages, correspondence, letters, notes, memoranda, telephone messages, voicemail, Bloomberg or other form of instant message program communications, telegraphs, telexes, telecopiers, cables, writings, drawings, graphs, charts, images, analyses, compilations, reports, presentations, contracts, agreements, promissory notes, invoices, orders, loan agreements, financing statements, financial instruments, expense accounts, bank statements, tax returns, financial statements, worksheets, profit and loss statements, price lists, minutes, manuals, diaries, calendars, and other data or data compilations, whether an original or a copy, whether in electronic format or in a paper form.  In the case of multiple non-identical drafts or versions of a document, each non-identical draft or version (including red-lined or compared copies of documents or those where handwritten notes, addenda, editing marks or marginal comments appear thereon or are attached thereto) is a separate document.

3. The terms "all," "any," "each" and "every" shall each be construed as all, any, each and every to bring within the scope of the interrogatory or interrogatories all information that might otherwise be construed to be outside of its scope.

4. The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the interrogatory or interrogatories all information that might otherwise be construed to be outside of its scope.

5. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

6. The term "including" means "including, but not limited to."

7. The term "person" means any natural person or any business, legal or government entity, association or trust.

8. The plural of any word shall include the singular form of that word and vice versa.

9. Unless otherwise specified herein, all capitalized terms shall have the meanings ascribed to them in the Answer, Amended Complaint, Complaint, Answering Brief, and Motion to Expedite.

10. "Amended Complaint" means the Plaintiff's First Amended Complaint [A.D.I. 117].

11. "Answers" means the Answers to the Amended Complaint filed by the California State Lands Commission and the State of California. [A.D.I. 126-127].

12. "Beacon West" means Beacon West Energy Group, LLC, the contractor selected by the SLC to operate and maintain Platform Holly and the EOF through decommissioning.

13. "CEQA" means the California Environmental Quality Act. *See* Cal. P.R.C. §§ 21000–21189.

14. "Complaint" means *Plaintiff's Original Complaint for Inverse Condemnation* [Adv. D.I. 1].

15. "EOF" means the Ellwood Onshore Facility, an oil and gas processing facility in Goleta, California, which includes all physical, real, and other property associated with EOF, including but not limited to equipment, pipelines, piers, access roads, seep tents, firewater lines, appurtenances, and other property; permits, easements, licenses, rights-of-way and other rights relating to access, operation, and maintenance of EOF; and other similar items, both physical and non-physical in nature.

16. "ExxonMobil" means Exxon Mobil Corporation and its officers, directors, employees, partners, parents, subsidiaries, affiliates, agents, financial advisors, attorneys, accountants, representatives or other persons acting, or who have acted, on ExxonMobil Corporation's behalf.

17. "Line 901" means the pipeline located in Santa Barbara County, California, owned by Plains Pipeline, LP, that ruptured on May 19, 2015.

18. "Motions to Dismiss" means *California State Lands Commission's Motion to Dismiss* [Adv. D.I. 8] and *State of California's Motion to Dismiss* [Adv. D.I. 12].

19. "Motion to Expedite" means *Motion for Entry of an Order Expediting the Adversary Proceeding Pursuant to Plaintiff's Proposed Litigation Schedule* [Adv. D.I. 2].

20. "Old Line 96" means the original Line 96 Pipeline, a 3.4-mile, 10-inch diameter pipeline that began at the EOF and terminated at the Ellwood Marine Terminal, and was abandoned in accordance with Condition of Approval No. 15 of the City of Goleta's Permit No. 09-088-DP and Condition 9b of the City of Goleta Franchise Agreement, which required its abandonment and/or removal.

21. "Permit to Operate" means Permit No. 7904-R11 issued to Venoco, LLC in May 2018 by the Santa Barbara County Air Pollution Control District.

22. "Platform Holly" means an offshore platform used to conduct drilling operations in the SEF.

23. "Reply" means *California State Lands Commission's Reply Brief in Support of Motion to Dismiss* [Adv. D.I. 28].

24. "Reservation" means *California State Lands Commission's Assertion and Reservation of Administrative-Expense Claim for Purposes of Setoff Rights* [D.I. 1063].

25. "SLC" means the California State Lands Commission and its commissioners, officers, directors, employees, partners, parents, subsidiaries, affiliates, agents, financial advisors, attorneys, accountants, representatives or other persons acting, or who have acted, on the California State Lands Commission's behalf.

26. "SLC/BW Agreement" means the agreement between the SLC and its contractor attached to the SLC's Reservation as Exhibit B.

27. "SLC/Goleta MOU" means the *Memorandum of Understanding between the California State Lands Commission Regarding Oil and Gas Facility Jurisdictional Issues*.

28. "South Ellwood Field" or "SEF" means those assets for which Venoco, LLC executed and delivered quitclaim deeds to the SLC surrendering all of their right, title, and interests to Oil and Gas Lease numbers PRC 421, PRC 3242 and PRC 3120.

29. "State" means the State of California and its elected officials, state agencies, commissioners, officers, directors, employees, partners, parents, subsidiaries, affiliates, agents, financial advisors, attorneys, accountants, representatives or other persons acting, or who have acted, on the behalf of the State of California, including, but not limited to, the California State

Lands Commission, California Department of Conversation, Division of Oil, Gas, & Geothermal Resources, California State Controller, California Franchise Tax Board, and Regents of the University of California.

### MATTERS FOR EXAMINATION

1. All facts arising from or related to the matters that are the subject of the Amended Complaint, the Answers, the Motion to Expedite, the Motions to Dismiss, the Reply, and the Reservation, including without limitation the matters set forth in Nos. 2 through 18 below.

2. Responses the State or SLC has provided to all written discovery served in this matter and all efforts undertaken by the State or SLC to search for information and documents responsive to such discovery.

3. Negotiation and execution of the Reimbursement Agreement.

4. Negotiation and execution of the Gap Agreement and amendments thereto.

5. Negotiation and execution of the SLC's agreement with Beacon West.

6. Valuation of the EOF as of April 17, 2017, October 1, 2018, and October 15, 2018, including:

    a. its real estate value;

    b. the value of the EOF equipment; and

    c. estimated time and costs to remediate EOF.

7. Valuation of the Permit to Operate, including:

    a. Analyses related to the timing, costs and other considerations for applying for a new air permit; and

    b. Potential new or different terms or conditions that would be required under a new Permit to Operate.

8. Alternatives to use of the EOF to complete all or any of the decommissioning activities associated with Platform Holly and/or EOF, including:

    a. Potential application of CEQA to pursue such an alternative, including the necessity, time, and costs to conduct a CEQA analysis; and

    b. Identification of alternative(s) most likely to be pursued to satisfy CEQA considerations.

9. Potential methods to transport hydrocarbons from EOF, including trucking, barging, rail, Old Line 96, or any other pipeline.

10. Actual or potential uses of the EOF by the State, SLC, or another third party, including:

    a. Any projects or activities performed or planned that are contemplated under Exhibit A "Scope of Work" of the SLC/BW Agreement, including "Optional Tasks," as described therein;

    b. The transport or sale of hydrocarbons from the EOF, including by trucking, barging, rail, Old Line 96, or another other pipeline, including by repair or replacement of Line 901;

    c. Production volumes, gas usage, and gas composition relating to the SEF, seeps, and Platform Holly from before shut-in of the SEF to present; and

    d. Production and sales projections for production sold or otherwise transferred from the EOF during decommissioning activities associated with Platform Holly and the SEF.

11. The State or SLC's exercise of purported police powers, including:

      a.      Any analyses of authority to exercise such police powers by occupying the EOF, and to delegate such authority to a private party;

      b.      Any identified environmental, health, or safety risks associated with the EOF or Platform Holly;

      c.      Operations in compliance with applicable environmental, health, and safety regulations;

      d.      Any projects or activities performed or planned outside the "Current Baseline Conditions," as defined by Exhibit A "Scope of Work" of the SLC/BW Agreement; and

      e.      Any improvement made to the EOF and the justification, timing, cost, and authorization to undertake any such improvement.

12.      The SLC/Goleta MOU and the Goleta proof of claim, POC 117, as it relates to the EOF.

13.      Use restrictions at the EOF, including potential modifications to such restrictions and estimated time and costs associated with obtaining such modifications.

14.      ExxonMobil's activities associated with decommissioning of Platform Holly, the SEF, or the EOF, including:

      a.      The August 21, 2017 Letter of Intent between the SLC and ExxonMobil;

      b.      ExxonMobil's decommissioning obligations associated with Platform Holly, the SEF, or the EOF, including potential responsibilities for costs relating to the use or purchase of EOF; and

      c.      ExxonMobil's proofs of claim, as they relate to the EOF.

15. The State or SLC's ability to satisfy a monetary judgment in relation to the Complaint, including the source or sources of funds for such a judgment.

16. The relationship between the State and SLC, including:

    a. Whether the SLC is separately incorporated from the State;

    b. Whether the SLC can sue or be sued in its own right; and

    c. Whether the SLC is subject to state taxation.

17. The SLC's Reservation, including:

    a. The amount of the claim and the amount of the claim that overlaps with POC 106, or with any other claims being asserted against the Debtors, and the reasons for such overlap;

    b. The work performed by the State or SLC, as noted in paragraph 5 of the Reservation;

    c. Any benefit to the Venoco or Liquidating Trust bankruptcy estate from such work;

    d. The election by the State or SLC to file a claim to preserve its right of setoff as is alleged in paragraph 19 of the Reservation, instead of pursuing an administrative claim not limited to setoff but instead for payment of the alleged amount; and

    e. Any consideration that the State or SLC gave to amending or modifying the Reservation, or whether it has any future intention to do so.

18. The SLC's proof of claim, POC 106, including:

    a. The amount of the claim in item 7, the alleged basis of the claim in item 8, and the portion of the claim that may overlap with any other claims being asserted against

-12-

the Debtors, including by Exxon through its proof of claims asserted in the Debtors' cases; and

        b.      Any consideration the State or SLC gave to amending or modifying the claim, or whether it has any future intention to do so.