# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| VENOCO, LLC, | Case No. 17-10828 (JTD) |
| Liquidating Debtor. | |
| EUGENE DAVIS, in his capacity as Liquidating Trustee of the Venoco Liquidating Trust, | |
| Plaintiff, | Adv. Pro. No 18-50908 (JTD) |
| v. | |
| STATE OF CALIFORNIA and CALIFORNIA STATE LANDS COMMISSION, | |
| Defendants. | |

## THE LIQUIDATING TRUSTEE'S POST-TRIAL RESPONSE BRIEF ON DAMAGES

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@morrisnichols.com
aremming@morrisnichols.com
mtalmo@morrisnichols.com

**BRACEWELL LLP**

Robert G. Burns (admitted *pro hac vice*)
Mark E. Dendinger (admitted *pro hac vice*)
31 W. 52nd Street, Suite 1900
New York, New York 10019
Telephone: (212) 508-6100
Facsimile: (212) 508-6101
Robert.Burns@bracewell.com
Mark.Dendinger@bracewell.com

**BRACEWELL LLP**

Bryan S. Dumesnil (admitted *pro hac vice*)
Nancy McEvily Davis (admitted *pro hac vice*)
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713)-221-1520
Facsimile: (800) 404-3970
Bryan.Dumesnil@bracewell.com
Nancy.Davis@bracewell.com

Jason B. Hutt (admitted *pro hac vice*)
Brittany Pemberton (admitted *pro hac vice*)
2001 M Street, NW
Washington, District of Columbia 20036
Telephone: (202) 828-5800
Facsimile: (202) 857-2114
Jason.Hutt@bracewell.com
Brittany.Pemberton@bracewell.com

*Counsel for the Liquidating Trustee*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

I.  ARGUMENT AND AUTHORITIES ................................................................................1

    A.  The Trustee Is Not Required To Define The Market Or Identify The Market Participants To Prove The EOF's Value. .....................................................1

    B.  The Trust Is Entitled To Just Compensation For The Value Of The EOF's Air Permit. ..............................................................................................................3

        1.  The EOF Air Permit Is A Valuable Component Of The EOF. .....................3

        2.  Compensation For The EOF Air Permit Does Not Constitute Consequential Damages. ...............................................................................6

    C.  Defendants' Post-Trial Brief Is Riddled With Legal And Factual Errors. ..............8

    D.  The Trustee is Entitled To Attorneys' Fees. ..........................................................10

II. CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) ................................................................................. 10

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975) ............................................................................................. 10

*Am. Pelagic Fishing Co., L.P. v. United States*,
    379 F.3d 1363 (Fed. Cir. 2004) .............................................................................. 4

*Armstrong v. United States*,
    364 U.S. 40 (1960) .................................................................................................. 7

*City of Los Angeles v. Allen's Grocery Co.*,
    265 Cal. App. 2d 274 (1968) .................................................................................. 6

*City of Los Angeles v. Decker*,
    558 P.2d 545 (Cal. 1977) ........................................................................................ 2

*City of Milwaukee Post No. 2874 Veterans of Foreign Wars of U.S. v.
    Redevelopment Auth. of City of Milwaukee*,
    319 Wis. 2d 553 (2009) .......................................................................................... 9

*City of Oakland v. Oakland Raiders*,
    32 Cal. 3d 60 (1982) ............................................................................................... 7

*Comm'r of Transp. v. Baker Place L.P.*,
    50 Conn. Supp. 299 (Conn. Super. Ct. 2005) ......................................................... 9

*Conti v. United States*,
    291 F.3d 1334 (Fed. Cir. 2002) .............................................................................. 4

*County of San Diego v. Rancho Vista Del Mar, Inc.*,
    16 Cal. App. 4th 1046 (1993) ................................................................................. 2

*Dep't of Transp. v. Adams Outdoor Advert.*,
    804 S.E. 2d 486 (N.C. 2017) .................................................................................. 5

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ................................................................................................ 10

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
    958 F.2d 896 (9th Cir. 1992) .................................................................................. 5

|  | Page(s) |
|---|---|

*Hawkeye Commodity Promotions, Inc. v. Vilsack*,
  486 F.3d 430 (8th Cir. 2007) ............................................................................................. 4

*Hooten v. United States*,
  405 F.2d 1167 (5th Cir. 1969) ........................................................................................... 6

*Kafka v. Mont. Dep't of Fish, Wildlife & Parks*,
  201 P.3d 8 (Mont. 2008) ................................................................................................... 4

*Kimball Laundry Co. v. United States*,
  338 U.S. 1 (1949) ........................................................................................................... 7, 8

*Knick v. Twp. of Scott, Pa.*,
  139 S. Ct. 2162 (2019) ...................................................................................................... 2

*Lynch v. United States*,
  292 U.S. 571 (1934) .......................................................................................................... 7

*Members of the Peanut Quota Holders Ass'n v. United States*,
  421 F.3d 1323 (Fed. Cir. 2005) ......................................................................................... 4

*Memmer v. United States*,
  150 Fed. Cl. 706 (Fed. Cl. 2020) ....................................................................................... 1

*Mitchell v. United States*,
  267 U.S. 341 (1995) .......................................................................................................... 4

*Monongahela Navigation Co. v. United States*,
  148 U.S. 312 (1893) .......................................................................................................... 5

*Redevelopment Agency v. Gilmore*,
  38 Cal. 3d 790 (1985) ................................................................................................... 7, 8

*Roehm v. County of Orange*,
  32 Cal. 2d 280 (1948) ....................................................................................................... 6

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) .......................................................................................................... 7

*State v. Moore Outdoor Props., L.P.*,
  416 S.W. 3d 237 (Tex. App. 2013) ................................................................................... 5

*United States v. 100 Acres of Land*,
  468 F.2d 1261 (9th Cir. 1972) ........................................................................................... 1

*United States v. 37.15 Acres of Land*,
  77 F. Supp. 798 (N.D. Cal. 1948) ..................................................................................... 6

**Page(s)**

*United States v. Fuller*,
 409 U.S. 488 (1973) ................................................................................................................ 4

*United States v. Gen. Motors Corp.*,
 323 U.S. 373 (1945) ............................................................................................................ 5, 6

**Statutes**

Cal. Code Civ. Pro. § 1036 ........................................................................................................ 10

Cal. Code Civ. Pro. § 1263.320(a) ............................................................................................... 4

Cal. Code Civ. Pro. § 1263.320(b) ............................................................................................... 1

Cal. Pub. Res. Code § 3237(c)(2) ................................................................................................ 3

**Other Authorities**

S. Rep. No. 101-228 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 3385 ...................................... 4

Thomas E. Plank, *The* Erie *Doctrine and Bankruptcy*,
 79 Notre Dame L. Rev. 633 (2004) ...................................................................................... 10

## I. ARGUMENT AND AUTHORITIES

### A. The Trustee Is Not Required To Define The Market Or Identify The Market Participants To Prove The EOF's Value.

1. After largely abandoning the opinions of their own experts, Defendants now argue that the Trustee can only prevail if he identifies another willing tenant in the market. This is misguided for three reasons.

2. First, California law allows for valuation of property taken "for which there is no relevant, comparable market" by any method that is "just and equitable." Cal. Code Civ. Pro. § 1263.320(b). Federal courts similarly recognize that "if there are no comparable sales, then other methods must be resorted to in order to ascertain market value." *United States v. 100 Acres of Land*, 468 F.2d 1261, 1265 (9th Cir. 1972). Courts have further stated that "the lack of an actual willing lessee cannot be fatal to plaintiffs' claim for just compensation." *Memmer v. United States*, 150 Fed. Cl. 706, 759 (Fed. Cl. 2020).

3. Second, even if the Trustee is required to prove the existence of a market (and he is not), unrefuted evidence presented at trial identifies other potential market participants for the EOF. Mr. Arnold testified that ExxonMobil "certainly could be a possibility" of an entity that would want to rent the EOF as a petroleum processing facility. Mar. 8 Trial Tr. 88:10–16. Ms. Lucchesi herself agreed that anyone with P&A responsibility, including ExxonMobil, would have a need to use the EOF. *See* Mar. 9 Trial Tr. 235:13–236:1. Beacon West was awarded a $19 million contract to complete Phase I of the decommissioning and P&A work; Beacon West, or other contractors interested in a multi-million-dollar contract, were among the potential market participants. *See, e.g.*, Ex. P25. And finally, Mr. Goesling testified that Defendants' scrap dealer at MatthewsDaniel was yet another potential market participant. Mar. 8 Trial Tr. 170:15–21.

4.  Third, the Trustee is not required to identify a non-governmental tenant to demonstrate the EOF's value.[1] *County of San Diego v. Rancho Vista Del Mar, Inc.*, on which Defendants rely, stands for the non-controversial principle that property cannot be valued solely based upon its special value to the government. 16 Cal. App. 4th 1046, 1061 (1993). *Rancho Vista* explains that "some proposed uses of the property may be carried out by <u>either a public entity or by a private individual</u> and that sometimes the government's proposed use of the property is also the highest and best use of the property in the hands of a private property owner." *Id*. (emphasis added). In such situations the property owner is "allowed to value the property based on a highest and best use which also happens to be the use proposed by the government entity." *Id*.; *see also City of Los Angeles v. Decker*, 558 P.2d 545, 550 (Cal. 1977) (property owner's evidence that airport parking was the highest and best use of the land, regardless of who owned the land, was admissible).

5.  Mr. Goesling and Ms. Spletter[2] each determined that the highest and best use of the EOF is its current use, to support P&A. Mar. 8 Trial Tr. 114:8–11, 123:1–124:13 (Goesling testimony); Mar. 9 Trial Tr. 66:14–67:17, 137:23–138:2 (Spletter testimony). The government does not "provide[] the only market or demand for [that] proposed use." *Rancho Vista*, 16 Cal. App. 4th at 1062. Indeed, the statutory structure governing offshore leasing in the State of California (like the federal structure) is intended to require private, predecessor-in-interest parties, <u>not the government,</u> to undertake P&A of offshore wells, which is why Defendants preserved their

---

[1] Defendants' suggestion that the Trustee must "show [an] effort to market, rent, or sell the EOF" is without legal support. Defs.' Post-Trial Br. (A.D.I. 280) at 5. The Trustee has not identified case law supporting this claim, which is understandable given that "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019).

[2] Because Mr. Arnold's assignment was to determine fair rental value of the property as an onshore petroleum processing facility, he did not separately form an opinion on the highest and best use. Mar. 8 Trial Tr. 50:6–18.

right to enforce against ExxonMobil. *See, e.g.*, Ex. P44 at P44.0004–5; *see also* Cal. Pub. Res. Code § 3237(c)(2).

**B.    The Trust Is Entitled To Just Compensation For The Value Of The EOF's Air Permit.**

6.    Lacking any expert to value the EOF Air Permit on their behalf, Defendants argue that an award of just compensation to the Trust must entirely exclude the value of the EOF Air Permit and Emission Reduction Credits.[3] This is inconsistent with both federal and California law.

### 1.    The EOF Air Permit Is A Valuable Component Of The EOF.

7.    Defendants argue for the first time, based upon statements contained in the EOF Air Permit and similar statutory language related to ERCs (and without any trial testimony on the matter), that the EOF Air Permit creates neither a property right nor an exclusive privilege. Defs.' Post-Trial Br. (A.D.I. 280) at 14, 16. The purpose of that language is <u>not</u> to prevent just compensation for the value a permit adds to a property like the EOF, but rather to prevent takings claims when the granting government agency revokes, modifies, or denies a permit. For example, Defendants cite 42 U.S.C. § 7651b(f) which relates to a federal pollution credit trading program. Defs.' Post-Trial Br. (A.D.I. 280) at 16. In enacting language disclaiming any property right in the credits, Congress explained:

> [t]he purpose in characterizing the legal or property status of [the pollution] allowances . . . is to make clear that regulatory actions taken subsequent to the issuance of allowances are not subject to the 'takings clause' of the U.S. Constitution. . . . [S]hould Congress or [the U.S. Environmental Protection Agency] limit, revoke, or otherwise modify the allowances or the underlying regulatory program established [by statute or regulations], the U.S. government will not be

---

[3] By separately arguing that the EOF Air Permit and the ERCs are not compensable property, Defs.' Post-Trial Br. (A.D.I. 280) at 14–17, Defendants seemingly believe that the Trustee is trying to obtain just compensation for <u>both</u> the EOF Air Permit and Emission Reduction Credits. This is wrong. The Trust's expert witness, Mark Berkman, testified that the value of potential ERCs is an alternative way to estimate the value of the EOF Air Permit. Trustee's Post-Trial Br. (A.D.I. 282) at ¶ 54. Because the ERCs are not a separate class of assets for which the Trustee seeks just compensation, the Trustee responds here directly only to Defendants' arguments about the EOF Air Permit (although this response applies equally to the ERCs).

obliged to compensate allowance-holders for loss of the allowances or any loss in their value.

S. Rep. No. 101-228 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 3385, 3704. In other words, the EOF Air Permit language Defendants rely on does not address the circumstances here—*i.e.*, where the Trustee seeks compensation for the loss of a permit that occurred because the government has temporarily taken the permit <u>for its own use</u> as part of a <u>physical invasion</u> of private property.

8.      Defendants' cases underscore this point. In all but one (*Fuller*, which is distinguishable for other reasons), the alleged taking is a <u>regulatory</u> taking.[4] With regulatory takings, the taking occurs <u>because</u> the agency that issued the permit or license revokes or modifies it (or refuses to grant it in the first place) or <u>because</u> there is a change in law or regulation that renders the permit or license useless.[5] Here, the Trustee seeks just compensation because Defendants <u>appropriated and used</u> the EOF's Air Permit.

9.      More importantly, just compensation for Defendants' taking includes the value added to the property of the existing EOF Air Permit. By statute, determining just compensation requires considering "all the uses and purposes for which the property is reasonably adaptable and available." Cal. Code Civ. Pro. § 1263.320(a); *see also Mitchell v. United States*, 267 U.S. 341, 344–45 (1995). Not only is the EOF "reasonably adaptable and available" for use as an oil and gas processing facility supporting offshore P&A activities, it <u>is</u> being temporarily taken for that exact purpose (Mar. 9 Trial Tr. 230:1–4)—a use that would be "unavailable" but for the existence of the EOF Air Permit.

---

[4] *See Conti v. United States*, 291 F.3d 1334 (Fed. Cir. 2002), *Members of the Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323 (Fed. Cir. 2005); *Kafka v. Mont. Dep't of Fish, Wildlife & Parks*, 201 P.3d 8 (Mont. 2008); *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430 (8th Cir. 2007); and *American Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363 (Fed. Cir. 2004).

[5] Although a condemnation case, *United States v. Fuller* is not to the contrary. The issue there was whether just compensation should consider the value of condemned land from its use in combination with adjacent land subject to a grazing permit. *Fuller*, 409 U.S. 488, 493 (1973). *Fuller* does not address the situation where a permit issued specifically for the real property that was condemned was also physically taken.

10. It is irrefutable that the EOF would have far less value to Defendants and any other tenant (like ExxonMobil) without an air permit authorizing emissions from the facility. This is supported by ample testimony on the necessity of the EOF Air Permit and the difficulty alternative permitting would create. *See e.g.*, Mar. 9 Trial Tr. 229:12–19 (without a proper permit, the EOF cannot operate or treat gas from Platform Holly); *id.* at 231:21–232:13 (describing "significant permitting hurdles" and the "insurmountable regulatory requirements"); *see also* Mar. 9 Trial Tr. 229:20–25; *id.* at 230:1–4.

11. Consequently, to constitute "a full and perfect equivalent for the property taken," *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 326 (1893), just compensation for the EOF must include the value associated with the EOF Air Permit. *United States v. Gen. Motors Corp.*, 323 U.S. 373, 383 (1945) (fair rental value for the temporary taking of a warehouse includes the value of "the elements which would certainly and directly affect the market price agreed upon by a tenant and a sublessee . . . to aid in the determination of" the market price); *see also State v. Moore Outdoor Props., L.P.*, 416 S.W. 3d 237, 246 (Tex. App. 2013) (Because the trier of fact must consider all of the "uses to which the property was reasonably adaptable and for which it was . . . available within a reasonable time[,] . . . the existence of the permit would be taken into consideration in determining the fair market value of the leasehold and the billboard structure regardless of whether the State can be said to have 'taken' the permit."); *Dep't of Transp. v. Adams Outdoor Advert.*, 804 S.E. 2d 486, 495 (N.C. 2017) (similar). Here, any purchaser or lessee of the EOF wishing to use it to support the P&A activities would expect to pay more for the facility because of the valid EOF Air Permit, which can be transferred to subsequent owners or operators of the EOF under SBC APCD Rule 203.D. *See G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 902 (9th Cir. 1992) (although a license may be "merely a privilege so

far as the relations between the licensee and the state are concerned, <u>it is property in any relationship between the licensee and third persons</u>, because the license has value and may be sold.") (quoting *Roehm v. County of Orange*, 32 Cal. 2d 280, 282–83 (1948) (emphasis original) (concluding that certificate to obtain a governmental privilege was a property right under California law).

### 2. Compensation For The EOF Air Permit Does Not Constitute Consequential Damages.

12.     Defendants argue that the EOF Air Permit is merely a consequential damage because it is "too remote" from the taking of the EOF, but this argument is contrary to case law and divorced from reality. It is "well established" under both California law and federal law "that the condemnor shall only pay compensation for the property taken and shall not be required to compensate for any and all losses which may have been sustained by an owner or otherwise as a consequence of the taking." *City of Los Angeles v. Allen's Grocery Co.*, 265 Cal. App. 2d 274, 280 (1968); *Gen. Motors Corp.*, 323 U.S. at 382 (same). The EOF Air Permit was an integral part of what Defendants temporarily took; not a consequential loss of the taking.

The EOF Air Permit is as much Trust property as the land, processing equipment, and fixtures at the EOF. Although courts consistently decline to provide just compensation for injuries that have yet to occur, here there is no dispute that the Defendants have taken the EOF Air Permit. *See, e.g., Gen. Motors Corp.*, 323 U.S. at 379 (excluding from just compensation future loss of profits, moving expenses for removable fixtures and personal property, or the loss of good will); *Hooten v. United States*, 405 F.2d 1167, 1169 (5th Cir. 1969) (excluding contracts lost as a result of the taking); *United States v. 37.15 Acres of Land*, 77 F. Supp. 798, 803 (N.D. Cal. 1948) (excluding expenses for closing and reopening the operations of a hotel taken by the government); *Allen's Grocery Co.*, 265 Cal. App. 2d at 280–81 (excluding loss to or destruction of a business).

In contrast to these common examples, the EOF Air Permit is not a speculative future loss. It is a valuable asset of the Trust that existed at the time of the taking—regardless of whether it is valued based on the cost to replace it or the potential value of ERCs.

13. Defendants' cases are inapposite. In *Kimball Laundry Co. v. United States*, the owner of a laundry temporarily condemned by the U.S. military during World War II argued that he should be paid just compensation for the government's preemption of the laundry's "trade routes," referring to the list of customers amassed over the years and the customers' loyalty to the laundry. 338 U.S. 1, 8 (1949). The Court noted "[w]hen fee title to business property has been taken . . . the amount of compensation payable should not include speculative losses consequent upon the realization of the remote possibility" that the owner will not be able to relocate the "going-concern value" of the business. *Id.* at 14–15 However, the Court did <u>not</u> conclude that the "trade routes"—or any other intangible asset—was a speculative, consequential, and non-compensable damage. *Id.* at 15. Instead, the Court concluded that the government's temporary occupancy of the laundry preempted the business owner's use of the "trade routes" and awarded "compensation for whatever transferable value their temporary use may have had." *Id.* at 16.[6]

14. Defendants' reliance on *Redevelopment Agency v. Gilmore* is equally misplaced. Although interest is an element of just compensation, the *Gilmore* court concluded that just compensation did not include the landowner's <u>cost of borrowing funds</u> to secure a property to

---

[6] Defendants attempt to paint the "going-concern value" discussed in *Kimball* as the sole exception to a broad general rule that the taking of only real property is compensable. Defs.' Br. at 16–17 ("[J]ust compensation is limited, with [the exception of going-concern value] to the value of real property being taken."). This is wrong: intangible property is compensable in many instances. *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984) a state law trade-secret property right is protected by the Taking Clause of the Fifth Amendment); *Armstrong v. United States*, 364 U.S. 40, 44, 46 (1960) (materialman's lien provided for under Maine law protected by Takings Clause); *Lynch v. United States*, 292 U.S. 571, 579 (1934) (valid contracts with the United States are property within meaning of the Takings Clause); *City of Oakland v. Oakland Raiders*, 32 Cal. 3d 60, 68 (1982) (property rights associated with the ownership of a professional football team franchise are intangible property under California's eminent domain law).

replace the one taken; such cost was a loss "merely consequential to displacement or relocation." *Redevelopment Agency*, 38 Cal. 3d 790, 802–03 (1985). In contrast, the loss of the EOF Air Permit is a direct result of Defendants' taking, not a remote consequence of shuttering or moving a business.

**C.     Defendants' Post-Trial Brief Is Riddled With Legal And Factual Errors.**

15.     There are numerous other legal and factual errors in Defendants' Brief. The Trustee addressed many of these in his summary judgment briefs (A.D.I. 182, 237), Proposed Findings of Fact (A.D.I. 281), or Post-Trial Brief (A.D.I. 282), so the Trustee responds only briefly to these issues here.

- Defendants provided a table of so-called "require[ments]" to "obtain a damages award" (Defs.' Post-Trial Br. (A.D.I. 280) at 3), but it is supported by no citations, and no authority. The elements the Trustee must prove to prevail are simple and do not include any of the "requirements" listed by Defendants. *See* Trustee's Post-Trial Br. (A.D.I. 282) at 4–7 (describing just compensation and fair market value under California and federal law and fair rental value as the measure of just compensation for a temporary taking).

- Defendants' assert that the Trustee has not been "able to prove any harm or injury" to the Trust. Defs.' Post-Trial Br. (A.D.I. 280) at 4. On the contrary, the Trustee provided sworn testimony regarding harm to the Trust from Defendants' uncompensated and ongoing taking. *See* Trustee's Proposed Findings of Fact (A.D.I. 281) ¶¶ 55–56; Trustee's Br. in Support of Motion for Partial Summary Judgment (A.D.I. 182) ¶ 21; Trustee's Reply Br. in Support of Motion for Partial Summary Judgment (A.D.I. 237) ¶¶ 8–11.

- The Trustee agrees with Defendants that just compensation should only place the Trust in "as good a position had [its] property not been taken," *see e.g.* Defs.' Post-Trial Br. (A.D.I. 280) at 22; however, this is not an award of $0. It is an award of fair market rent because, according to Defendants' own admission, any other entity with P&A obligations, including ExxonMobil, BeaconWest or another contractor of the State, would have a need for use of the EOF. Trustee's Post-Trial Br. (A.D.I. 282) at ¶ 28.

- Despite Defendants' allegations to the contrary (Defs.' Post-Trial Br. (A.D.I. 280) at 13), Mr. Goesling did not follow the method rejected by *Kimball Laundry*. In that case, the petitioner sought to measure compensation for a temporary use of property based upon "the difference between the market value of the fee on the date of the taking and its market value on the date of its return." 338 U.S. at 7. Mr. Goesling testified that, among other things, he used an approach used by leasing companies, which considers a risk-free rate for the period of the lease, plus 300 basis points. Mar. 8 Trial Tr. 128:24–134:23.

- Defendants criticize the Trustee for allegedly "us[ing] the bankruptcy process as a shield and abandon[ing] its responsibility as primary obligor for the costs" of decommissioning and P&A offshore, Defs.' Post-Trial Br. (A.D.I. 280) at 1, and they assert that awarding damages to the Trust would be a windfall. *Id.* at 26. This argument fundamentally misunderstands the bankruptcy process and the Commission's contribution to Venoco's second bankruptcy. Prior to filing its second Chapter 11 petition, Defendants denied Venoco's applications for trucking permits and lease line adjustments because of Defendants' political distaste for oil and gas.[7] Venoco ultimately quitclaimed the Leases to the Commission, making ExxonMobil (and failing that, the Commission with financial support from the sureties) responsible for decommissioning and P&A (as contemplated by the terms of the Leases themselves). The Trust was subsequently created free of any obligation with respect to the Leases—including P&A.

- Similarly, expenses Defendants may have incurred related to operating and maintaining the EOF do not support the purported lack of damages to the Trust. Defs.' Post-Trial Br. (A.D.I. 280) at 26. Aside from being voluntarily incurred because the Commission declined to require ExxonMobil as Venoco's predecessor-in-interest to assume all of the liability for the P&A, Trustee's Proposed Findings of Fact (A.D.I. 281) ¶¶ 46–49, such costs are required to operate and maintain the EOF for Defendants to P&A the Wells, and the P&A is the subject of Defendants' claim in the bankruptcy, which has now been settled. *Id.* ¶ 10, 21 n.6.[8]

- Defendants' assertion that Ms. Spletter's opinion "double counts" the valuations of the Trust's other expert witnesses, Defs.' Post-Trial Br. (A.D.I. 280) at 19, rests on a gross misunderstanding of Ms. Spletter's testimony. Ms. Spletter testified that, to determine the fair rental value of the EOF, her methodology was to determine the value of all assets as assembled *as an alternative* to the individual valuations of Mr. Arnold, Mr. Goesling, Mr. Serieys, or Mr. Berkman. *Cf.* Trustee's Proposed Findings of Fact (A.D.I. 281) ¶¶ 218–225; Trustee's Post-Trial Br. (A.D.I. 282) ¶¶ 19–24, 73 & accompanying tables.

- Finally, Defendants' use of out-of-state case law involving condemned buildings to support their arguments that the EOF is worthless fails. Defs.' Post-Trial Br. (A.D.I. 280) at 24. These decisions are inapplicable because the public uses of the dilapidated condemned buildings in those cases[9] *necessitated* razing the buildings. Dismantling the EOF and remediating any contamination is not required for (and, in fact, would entirely frustrate) Defendants' public use of the EOF for onshore processing of oil and gas, and they have disclaimed any intent to do so. Trustee's Proposed Findings of Fact (A.D.I. 281) ¶ 53; Trustee's Post-Trial Br. (A.D.I. 282) ¶ 76. Additionally, just compensation in both of Defendants' cited cases was fair market value, not fair rental value. *Comm'r of Transp.*, 50 Conn. Supp. at 312; *City of Milwaukee Post*, 319 Wis. 3d at 596.

---

[7] *See* Combined Disclosure Statement and Joint Chapter 11 Plan (D.I. 922-1), Art. III.D ("[S]ince emerging from the 2016 Chapter 11 Cases, the lease line adjustment . . . application on which the 2016 Plan was highly dependent was derailed due to changes in the State of California's policies toward oil and gas activities in California.").

[8] Additionally, the State called on and was paid the full amount of the $22 million Bond required under the Lease. Trustee's Proposed Findings of Fact (A.D.I. 2821) ¶¶ 35–37.

[9] *Comm'r of Transp. v. Bakery Place L.P.,* 50 Conn. Supp. 299, 300, 311 (Conn. Super. Ct. 2005); *City of Milwaukee Post No. 2874 Veterans of Foreign Wars of U.S. v. Redevelopment Auth. of City of Milwaukee*, 319 Wis. 2d 553, 597, 604 (2009).

### D. The Trustee is Entitled To Attorneys' Fees.

16. After three years of unsuccessful and costly appeals precipitated by Defendants' attempt to move this proceeding to a state court in California to apply California state law, Defendants now brazenly argue that somehow the Trustee must rely on a federal law to support its claim for attorneys' fees arising from a state law claim. Defs.' Post-Trial Br. (A.D.I. 280) at 27–29. The Trustee would be pleased to provide further briefing on this issue if the Court finds this line of argument worthy of closer consideration. In short, the Trustee is entitled to attorneys' fees (as well as costs and interest) under Section 1036 of the California Code of Civil Procedure (a stated exception to the American Rule described in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975)). Moreover, the Third Circuit has explained that:

> the general federal caselaw rule [is] that there is no fee or cost shifting except as authorized by statute or rule. That source of authority need not be federal law, however. Neither *Alyeska* nor [Federal Rule of Civil Procedure] 54(d)(2), precludes a federal court from looking to state law to determine the rule of decision as to attorneys' fees in a state law case, and *Erie [R. Co. v. Tompkins*, 304 U.S. 64 (1938)] requires it to do so.

*Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224 (3d Cir. 1995) (internal citations omitted). Defendants' suggestion that the *Erie* doctrine applies only to courts sitting in diversity jurisdiction is flatly wrong. Defs.' Post-Trial Br. (A.D.I. 280) at 28. The doctrine applies regardless of how the federal court may hear a state law claim—including in bankruptcy jurisdiction. *See,* Thomas E. Plank, *The* Erie *Doctrine and Bankruptcy*, 79 Notre Dame L. Rev. 633, 636 (2004).

## II. CONCLUSION

The Trustee asks the Court to enter judgment for the Trust as set forth in the Trustee's Proposed Findings of Fact and Conclusions of Law and the Trustee's Post-Trial Brief.

Dated: May 31, 2022

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Matthew O. Talmo*
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@morrisnichols.com
aremming@ morrisnichols.com
mtalmo@ morrisnichols.com

-and-

**BRACEWELL LLP**
Bryan S. Dumesnil (admitted *pro hac vice*)
Nancy McEvily Davis (admitted *pro hac vice*)
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713)-221-1520
Facsimile: (800) 404-3970
Bryan.Dumesnil@bracewell.com
Nancy.Davis@bracewell.com

-and

Robert G. Burns (admitted *pro hac vice*)
Mark E. Dendinger (admitted *pro hac vice*)
31 W. 52nd Street, Suite 1900
New York, New York 10019
Telephone: (212) 508-6100
Facsimile: (212) 508-6101
Robert.Burns@bracewell.com
Mark.Dendinger@bracewell.com

-and-

-12-

> Jason B. Hutt (admitted *pro hac vice*)
> Brittany Pemberton (admitted *pro hac vice*)
> 2001 M Street, NW
> Washington, District of Columbia 20036
> Telephone: (202) 828-5800
> Facsimile: (202) 857-2114
> Jason.Hutt@bracewell.com
> Brittany.Pemberton@bracewell.com
>
> *Counsel for the Liquidating Trustee*