# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>VENOCO, LLC, *et al.*[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 17-10828 (JTD)<br><br>(Jointly Administered) |
| EUGENE DAVIS, in his official capacity as Liquidating Trustee of the Venoco Liquidating Trust,<br><br>                    Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, and CALIFORNIA STATE LANDS COMMISSION,<br><br>                    Defendants. | Adv. Proc. No. 18-50908 (JTD)<br><br>Re. A.D.I. 280 and 282 |

## **DEFENDANTS' ANSWERING POST-TRIAL BRIEF**

OFFICE OF THE CALIFORNIA
ATTORNEY GENERAL
Rob Bonta
Attorney General of California
Christina Bull Arndt
Supervising Deputy Attorney General
Mitchell E. Rishe
Deputy Attorney General
300 S. Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6394

DELAWARE DEPARTMENT OF
JUSTICE
Edward K. Black (DE No. 5302)
Deputy Attorney General
820 North French Street, C600
Wilmington, Delaware 19801
Telephone: (302) 577-4209

*Counsel for the State of California*

TROUTMAN PEPPER HAMILTON
SANDERS LLP
David M. Fournier (DE No. 2812)
Joanna J. Cline (DE No. 5873)
Kenneth A. Listwak (DE No. 6300)
Hercules Plaza
1313 Market Street, Suite 5100
Wilmington, DE 19801
Telephone: (302) 777-6500

LOEB & LOEB LLP
Steven S. Rosenthal (admitted *pro hac vice*)
Marc S. Cohen (admitted *pro hac vice*)
J.D. Taliaferro (admitted *pro hac vice*)
Alicia M. Clough (admitted *pro hac vice*)
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: (310) 788-2000

*Co-Counsel to California State Lands Commission*

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Venoco, LLC. (3555); TexCal Energy (LP) LLC (0806); Whittier Pipeline Corporation (1560); TexCal Energy (GP) LLC (0808); Ellwood Pipeline, Inc. (5631); TexCal Energy South Texas, L.P. (0812) (collectively, the "Debtors.") The mailing address for the Venoco Liquidating Trust, for purposes of these Chapter 11 cases, is: 5 Canoe Brook Drive, Livingston, NJ 07039.

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| ARGUMENT | 1 |
| I. The Trustee's Damages Case Contradicts Facts and Applicable Valuation Precepts. | 1 |
| II. The Trustee's Damages Case Is Impermissibly Speculative. | 6 |
| III. The Trustee's Damages Case with Respect to ERCs Lacks Legal and Factual Support. | 7 |
| IV. The Trustee's Damages Case Would Create a Windfall. | 8 |
| V. The Trustee Misconstrues Defendants' Argument Regarding Remediation Costs. | 8 |
| VI. The Trustee is Not Entitled to Attorney's Fees. | 9 |
| VII. Award of Interest. | 10 |
| CONCLUSION | 10 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Air Filter Co. v. McNichol*,
   527 F.2d 1297 (3d Cir. 1975)..................................................................................6

*Barnes v. Sun Chem. Corp.*,
   164 F. Supp. 3d 994 (W.D. Mich. 2016) .................................................................9

*Best v. California Apprenticeship Council*
   193 Cal. App. 3d 1448 (1987) ...............................................................................10

*Boyce v. Augusta-Richmond County*,
   111 F. Supp. 2d 1363 (S.D. Ga. 2000)....................................................................6

*Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*,
   No. SAG-18-03403, 2021 U.S. Dist. LEXIS 222009 (D. Md. Nov. 17, 2021).........5

*Chavez v. City of L.A.*,
   47 Cal. 4th 970 (2010) ...........................................................................................10

*People ex rel. Dept. of Trans. v. Diversified Props. Co.*,
   14 Cal. App. 4th 429 (1993) ..................................................................................10

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   No. 12-540-LPS, 2015 U.S. Dist. LEXIS 34873 (D. Del. Mar. 20, 2015) ...............5

*Fed. Express Corp. v. Accu-Sort Sys.*,
   No. 01-2503 ............................................................................................................5

*Havana Docks Corp. v. Carnival Corp.*,
   No. 19-cv-21724-BLOOM/MCALILEY, 2022 U.S. Dist. LEXIS 62347 (S.D.
   Fla. Apr. 1, 2022)....................................................................................................4

*In re Impinj, Inc. Deriv. Litig.*,
   2021 U.S. Dist. LEXIS 224687 (D. Del. Nov. 22, 2021) ........................................9

*J.J. Henry Co. v. United States*,
   411 F.2d 1246 (Ct. Cl. 1969) ..................................................................................6

*Kimball Laundry Co. v. United States*,
   338 U.S. 1 (1949).................................................................................................2, 5

*Kirby Lake Dev., Ltd v. Clear Lake City Water Auth.*,
   320 S.W.3d 829 (Tex. 2010)...................................................................................6

*Montgomery Ward & Co. v. Pac. Indem. Co.*,
   557 F.2d 51 (3d Cir. 1977)..................................................................................9

*NNN 400 Capital Ctr., LLC v. Wells Fargo Bank, N.A. (In re: NNN 400 Capital Ctr. 16, LLC)*,
   Nos. 16-12728 (JTD), 18-50384 (JTD), 2020 Bankr. LEXIS 2134 (Bankr. D. Del. Aug. 10, 2020)..................................................................................6

*Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*,
   590 B.R. 211 (Bankr. D. Del. 2018) ...................................................................6

*Otay Mesa Prop., L.P. v. United States*,
   670 F.3d 1358 (Fed. Cir. 2012)...........................................................................2

*Redevelopment Agency v. Gilmore*,
   38 Cal. 3d 790 (1985) .......................................................................................10

*Reeves v. Commonwealth Edison Co.*,
   2008 U.S. Dist. LEXIS 6340 (N.D. Ill. 2008) .................................................4, 5

*Rosenbank Rd. Med. Servs. v. Govindarajan*,
   2018 Cal. Super. LEXIS 6924 (Cal. Super. Ct. June 14, 2018)........................10

*Sacramento & San Joaquin Drainage Dist. v. Goehring*,
   13 Cal.App.3d 58 (1970) ....................................................................................2

*Salton Bay Marina v. Imperial Irrigation Dist.*,
   172 Cal.App.3d 914 (1984) ................................................................................9

*Sokolow v. Cty. of San Mateo*,
   213 Cal. App. 3d 231 (1989) ............................................................................10

*Soldo v. Sandoz Pharms. Corp.*,
   244 F. Supp. 2d 434 (W.D. Pa. 2003)................................................................5

*Tilem v. City of Los Angeles*,
   142 Cal.App.3d 694 (1983) ................................................................................9

*Youngman v. Yucaipa Am. All. Fund I, L.P. (In re Ashinc Corp.)*,
   Nos. 12-11564 (CSS), 13-50530 (CSS), 14-50971 (CSS), 2022 Bankr. LEXIS 1192 (Bankr. D. Del. May 2, 2022) ......................................................................6

**Statutes**

Cal. Code Civ. Pro. § 1036 ......................................................................................9, 10

**ARGUMENT**

The Trustee's Post-Trial Brief only confirms what the SLC's pre-trial *Daubert* motions predicted—the Trustee's damages theories are untethered to any actual harm, directly at odds with the basic valuation principles his own experts and case law recognize to be applicable, and rooted in hypothetical conditions inconsistent with reality. The speculation inherent in the Trustee's theories is apparent on its face, with a purported "proper measure" of damages at a brazen $158 - $163 million, and a purported "alternative" calculation—presumably an attempt to appear "reasonable"—coming in $136 million lower, at $22 - $25 million. The Trustee's approach is unsupported by the evidence, flies in the face of the principles that underlie *Daubert'*s gatekeeping jurisprudence, and ignores the broader context of what it is the Trustee is requesting—an award of damages from this Court to purportedly compensate the Venoco Trustee for the SLC's presence on the EOF solely for the purpose of cleaning up the mess left by Venoco.

**I.      The Trustee's Damages Case Contradicts Facts and Applicable Valuation Precepts.**

Assuming for purposes of this brief the existence of a taking,[1] which the SLC does not concede, the Trustee's Post-Trial brief and his Proposed Findings and Conclusions show that the parties largely agree on the general precepts that should govern the valuation analysis. It is the application of those precepts to the factual record where the parties sharply diverge.

As to basic valuation tenets, the parties concur that determining "just compensation" is an exercise rooted in the calculation of FMV (*see* Opening Brief at 7; *The Liquidating Trustee's Post-Trial Brief on Damages* [A.D.I. 282] (the "Trustee's Brief") at ¶ 9) and that, in the specific context of a temporary taking, courts have countenanced the use of FRV—a derivative of FMV—to

---

[1] The Trustee's failure to establish a taking is addressed in *Defendants Proposed Findings of Fact and Conclusions of Law*. [A.D.I. 279].

ascertain just compensation given that the property in question will not be permanently taken.[2]

Even more specifically, the parties further agree that:

- FMV is measured by the owner's loss, not the government's gain. "The value of the property to the government for its particular use is not a relevant criterion." Trustee's Brief at ¶ 12; Opening Brief at 7;

- Determining FMV requires a willing buyer and willing seller. Trustee's Brief at ¶¶ 9 and 13; Opening Brief at 7.

- Determining FMV requires an open and competitive market. Trustee's Brief at ¶¶ 9 and 13; Opening Brief at 3.

- A FMV calculation must consider suitable, legally permissible uses—"mere possible or imaginary uses or the speculative schemes of its proprietor are to be excluded." Trustee's Brief at ¶¶ 9 and 13; 3/8/2022 Trial Tr. at 49:24-50:5 (Arnold) ("the definition for highest and best use specifies that it must be a use that's legally permissible"); 3/8/2022 Trial Tr. at 59:14-16 (Goesling) ("Q: And a use on which an appraiser bases his calculations must be legally permissible, correct? A: Yes."); 3/9/2022 Trial Tr. at 66:23-67:1 (Spletter) ("in appraising a property, you have to consider what is the highest value that fits within the criteria of highest and best use, and [one of] those four criteria are it has to be a legally permissible use"); Opening Brief at 7.

- As to equipment, valuation can only be based on a "continued use" premise (*i.e.*, that assets will continue to be operated as they were historically) if the continued use would allow the assets to earn their cost of capital. 3/8/2022 Trial Tr. at 162:3-5 (Goesling).

- The proper measure of FRV is "the rental that probably could have been obtained." *See Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949); *see also* Opening Brief at 8; Trustee's Brief at ¶ 14.

Having confirmed the Trustee's agreement in concept to these universally accepted valuation principles, the Trustee's Post-Trial Brief then fails to show that his experts actually applied them in their analyses. Quite to the contrary, a close review of the Trustee's Brief, as with the Trustee's evidence at trial,[3] demonstrates that the Trustee's approach violates every single one

---

[2] It is well-established that under California and federal law, just compensation for a temporary taking is fair rental value. *See Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949) ("[T]he proper measure of compensation [in a temporary takings case] is the rental that probably could have been obtained . . . ."); *Otay Mesa Prop., L.P. v. United States*, 670 F.3d 1358, 1364 (Fed. Cir. 2012)*; Sacramento & San Joaquin Drainage Dist. v. Goehring*, 13 Cal.App.3d 58, 66 (1970) ; *see also* A.D.I. 247, Ex. D-2 [Defendants' Brief Opposing MIL Re: Remediation and Decommissioning, incorporated herein by reference]. Despite this general agreement, the Trustee switches valuation horses when it comes to the Air Permit (defined below) and, without explanation for his pivot, applies a purported FMV approach rather than a FRV approach. *See* discussion *infra* at III.

[3] The Trustee attaches several expert reports to his Post-Trial Brief, but they are not evidence. By agreement of the parties, and as reflected in the parties' exhibit lists, expert reports were not proffered or received into evidence.

of the precepts in the bullets above:

- <u>Value to Government:</u> In the Trustee's marquee damages theory, Ms. Spletter estimates the amount it would cost to build a replacement facility to carry out the P&A activities that the SLC is performing on the EOF as a result of Venoco's quitclaims. Trustee's Brief at ¶ 22. In its brief, the Trustee attempts to dodge the value-to-the-government problem by arguing that Ms. Spletter's analysis is not limited to the SLC and that "[a]*nyone* with responsibility for P&A of the Wells" would have to spend the amount calculated by Ms. Spletter. *Id.* at ¶28. But that is argument, not evidence. Ms. Spletter—the expert proffering the analysis—did not identify "anyone with responsibility" other than the SLC. The whole premise of her model is based on value to the government.

- <u>Willing Buyer:</u> Not one of the Trustee's experts—not Ms. Spletter in her all-in replacement cost approach nor the others with their a la carte valuations—identified a properly disclosed willing buyer (or renter) for the property or equipment at issue other than the SLC. They all relied upon hypothetical market participants, and in the case of the air permit valuation, hypothetical emission reduction credits ("<u>ERCs</u>"). *Id.* at ¶ 48-49.[4]

- <u>Competitive and Open Market:</u> Similarly, the Trustee's experts did not define a real market with real competitors; they assumed a hypothetical market. *Id*. at ¶¶ 47–49.

- <u>Permissible Use:</u> the calculations of Mr. Arnold (real property), Mr. Goesling (equipment) and Ms. Spletter (theoretical alternatives) effectively assumed that the EOF would be used for commercial oil and gas processing,[5] even though each of them admitted that such a use would not be permissible under applicable regulations. *Id*., at ¶¶ 22; 49.

- <u>Continued Use:</u> Mr. Goesling admitted that the equipment on the EOF was not earning its cost of capital. 3/8/2022 Trial Tr. at 164:25-167:2 (Goesling).

- <u>Rental That Probably Could Have Been Obtained:</u> **Perhaps most telling, none of the Trustee's experts offered an opinion that the valuation they put forward was a "rental that probably could have been obtained" in the real world.**

By their own admission, the Trustee's experts' theories are built on hypothetical conditions

---

[4] Mr. Goesling attempted to salvage his testimony regarding the absence of a willing buyer/lessee by suggesting that a scrap dealer could have been a market participant, but he admitted that he did not disclose the scrap dealer as a market participant in his Rule 26 disclosures, and in any event, his valuation is not based on a *de minimis* scrap value but rather on commercial oil and gas processing. Identifying a participant in the scrap market would not remedy Mr. Goesling's market-of-one problem.

[5] 3/8/2022 Trial Tr. at 47:22-48:2 (Arnold); 3/9/2022 Trial Tr. at 141:16-142:10; 146:23-147:7; 169:20-70:12 (Spletter). Recognizing that an analysis that assumed a commercial oil and gas use was subject to attack as inconsistent with the requirement of a legally permissible use, Mr. Goesling testified at trial that the use he assumed was a P&A use rather than a commercial oil and gas processing use. His testimony is not credible on this point. It is inconsistent with his admission that any assumed use had to be financially feasible (as in able to return cost of capital), which even according to him was based on his assumption that the EOF was previously operated as a successful business enterprise—commercial oil and gas production—before the pipeline burst and production stopped. 3/8/2022 Trial Tr. at 165:16 – 166:2 (Goesling);. Similarly, while Ms. Spletter says her valuation was based on a P&A use, that is belied by the fact that her creation of a hypothetical alternative to the EOF involved a fully functioning commercial facility (one which she admitted could not even have been completed during the period of the P&A project).

3

and assumptions—hypothetical renters, a hypothetical market, hypothetical uses, hypothetical earnings, hypothetical emission reduction credits, hypothetical harm. But as the evidence at trial showed, these conditions and assumptions are not merely "hypothetical" as that word is used in everyday parlance, they are affirmatively contrary to fact. Putting aside the irony of the Trustee craning his neck to find "anyone" with responsibility to P&A the wells rather than looking in the pre-petition mirror, the Trustee's alternate reality approach cannot serve as the basis for the admission of expert testimony, let alone an award of damages.

The case law confirms as much. In the recent case of *Havana Docks Corp. v. Carnival Corp.*,[6] for example, a court excluded the testimony of appraisers who conducted a valuation under USPAP—the same standards purportedly employed by the Trustee's experts—based on a hypothetical condition that the property at issue was in the same condition in 2022 as in 1960, despite the fact that the property had not been maintained since 1960. The court held there was no valid justification for the appraisers' use of this hypothetical and, by not accounting for the cost of neglect over the years, the experts "fail[ed] to demonstrate the financial feasibility of its suggested highest and best use of the property today," which made their opinion unreliable. *Id.* at *40. The logic of this result is equally applicable to the Trustee's damages theories. Consider, for example, that Goesling relied on an assumption of earnings and financial feasibility even though he admitted that operation of the equipment he valued was not profitable and generated no earnings, *i.e.*, his assumptions were indisputably false. *See* 3/8/22 Trial Tr. at 163-65.

Similarly, in *Reeves v. Commonwealth Edison Co.,* 2008 U.S. Dist. LEXIS 6340 (N.D. Ill. 2008), the court granted summary judgment for the defendant because the plaintiff's experts' opinions—appraisers of real property applying USPAP and opining on decline in value due to

---

[6] No. 19-cv-21724-BLOOM/MCALILEY, 2022 U.S. Dist. LEXIS 62347, at *39-41 (S.D. Fla. Apr. 1, 2022).

tritium contamination—were excluded under *Daubert* as "based on indisputably false assumptions." *Id*. at *22. The appraisals relied on the assumption that the land in question continued to be contaminated by tritium when, in fact, this was verifiably false—there was no longer contamination on the lot. The court found that use of that assumption rendered the testimony inherently unreliable and excluded it. *Id.* at *23-25. Other courts have reached similar conclusions.[7] The Trustee's experts' opinions must be excluded for the same reasons. Each of them is hinged upon a verifiably false assumption, and the Trustee has not met the standard it invokes under *Kimball Laundry* to prove a rental that probably could have been obtained.

The Trustee's half-hearted suggestion that ExxonMobil might have been a lessee had the SLC and ExxonMobil not entered into the Phase 1 Agreement does not salvage his approach. The Trustee cannot hypothesize away the Phase 1 Agreement, which, far from supporting the Trustee's argument that the SLC and ExxonMobil conspired to reach an agreement solely to deprive the Trustee of inverse condemnation claims, shows that the SLC and ExxonMobil disputed who was responsible for the P&A in the wake of Venoco's failure to perform those obligations, but reached a settlement because of the need to address the problems created by Venoco's quitclaims. *See* Ex. D-48 [Exxon Phase 1 Agreement]. Moreover, the Trustee never even contacted ExxonMobil about renting the EOF (*see* 3/7/2022 Trial Tr. at 78:11-13), and instead chose to enter into the Gap Agreement with the SLC. *See* Ex. P-26 [Gap Agreement]. He cannot now attempt to hinge his

---

[7] *See, e.g., Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.,* No. SAG-18-03403, 2021 U.S. Dist. LEXIS 222009, at *21-22 (D. Md. Nov. 17, 2021) (excluding expert damages opinion where the opinion was based on an assumption that ignored the business model of the industry at issue); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.,* No. 12-540-LPS, 2015 U.S. Dist. LEXIS 34873, at *4-5 (D. Del. Mar. 20, 2015) (excluding both sides' expert opinions (one *sua sponte*) because their damages calculations for patent infringement were both premised on an incorrect "hypothetical negotiation date"); *Fed. Express Corp. v. Accu-Sort Sys.,* No. 01-2503 Ma/P, 2006 U.S. Dist. LEXIS 102870, at *20-21 (W.D. Tenn. Jan. 13, 2006) (concluding that an expert's "incorrect assumption renders [the expert's] opinion regarding the hypothetical negotiated price speculative and unreliable, and is a sufficient basis for this court to exclude [the expert's] testimony"); *Soldo v. Sandoz Pharms. Corp.,* 244 F. Supp. 2d 434 (W.D. Pa. 2003) ("Expert testimony based on false assumptions and fictional or random data is inadmissible.").

entire damages theory on ExxonMobil as a market participant by making a speculative back-door post-trial argument in lieu of actual evidence. To the extent the Trustee suggests an appraisal based on a market of one is proper, Trustee's Brief at ¶ 50, he ignores the definitions of FMV used by his own experts, which require "a competitive and open market." *Id*. at ¶¶ 9, 13, 29, 48.

## II.    The Trustee's Damages Case Is Impermissibly Speculative.

Even if it were acceptable to construct a damages calculation on a foundation of assumptions known to be false and in violation of applicable principles, it is hornbook law that damages that are speculative are not recoverable.[8] Here, the speculative nature of the Trust's calculation, ranging from $22 million to $163 million, is apparent on its face. To grasp the order of magnitude of the Trustee's speculative overreach, consider that the parties agreed in the Gap Agreement that the SLC would pay Venoco a monthly sum of $100,000 during a portion of the P&A period, to be applied against any payment for the eventual disposition of the EOF ultimately agreed to by the parties or determined by a court.[9] The Trustee is asking this Court to award it anywhere from approximately 2 to 45 times that amount per month (*see* Trustee's Brief at ¶ 73)—

---

[8] *See, e.g., Am. Air Filter Co. v. McNichol*, 527 F.2d 1297, 1301 (3d Cir. 1975) ("[I]t is . . . elementary that purely speculative damages cannot be recovered." ); *Youngman v. Yucaipa Am. All. Fund I, L.P. (In re Ashinc Corp.)*, Nos. 12-11564 (CSS), 13-50530 (CSS), 14-50971 (CSS), 2022 Bankr. LEXIS 1192, at *126-27 (Bankr. D. Del. May 2, 2022) (finding, in the context of a breach of fiduciary duty claim, that "[c]ourts will refuse to award damages that are based on mere speculation or conjecture"); *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211, 273 (Bankr. D. Del. 2018) ( "The Court cannot award damages that are based on mere speculation or conjecture..."); *NNN 400 Capital Ctr., LLC v. Wells Fargo Bank, N.A. (In re: NNN 400 Capital Ctr. 16, LLC)*, Nos. 16-12728 (JTD), 18-50384 (JTD), 2020 Bankr. LEXIS 2134, at *81 (Bankr. D. Del. Aug. 10, 2020) (refusing to award damages based on speculation).

[9] *See* Ex. D-42 [Fourth Amendment to the Gap Agreement]. The Trustee's damages period impermissibly includes the period of the Gap Agreement. Trustee's Brief at ¶¶ 71-72.  If the Trustee were otherwise able to establish a taking, the takings period could not start any earlier than October 15, 2018, when the Gap Agreement terminated. *See Defendants' Opening Brief in Support of MSJ* [A.D.I. 135] at 25- 27; *Kirby Lake Dev., Ltd v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 844 (Tex. 2010) ("A person who consents to the governmental action, however, cannot validly assert a takings claim."); *J.J. Henry Co. v. United States*, 411 F.2d 1246, 1249 (Ct. Cl. 1969) ("The clear thrust of the authorities is that where the government possesses property under color of legal right, as by an express contract, there is seldom a taking in violation of the Fifth Amendment."); *Boyce v. Augusta-Richmond County*, 111 F. Supp. 2d 1363, 1382 (S.D. Ga. 2000)("[A] property owner cannot bring an inverse condemnation claim when the owner permits the government to use the property pursuant to an agreement.").

an astounding premium over the negotiated Gap Agreement amount—plus additional amounts for the alleged value of air permits. He has not established a credible, non-speculative basis for a damages award, or even that he has been damaged at all. He is merely floating outrageous figures, hoping that the Court lands somewhere between those numbers and zero.

### III. The Trustee's Damages Case with Respect to ERCs Lacks Legal and Factual Support.

The Trustee's arguments with respect to Title V Air Permit 7904 (the "Air Permit") and ERCs fail for some of the same reasons as his other theories, and for additional reasons unique to the Trustee's air permit/ERC theory. First, the Trustee all but admits that there is no independent economic value associated with ERCs, primarily because the Trustee never actually applied for or obtained ERCs and there were therefore no ERCs for the SLC to "take." Instead, the Trustee argues that the hypothetical ERCs can be used as a way to value the Air Permit itself.[10] *See* Trustee's Br. at ¶ 54. As with his other valuations, this theory is impermissibly premised on imaginary conditions that are not consistent with reality. *See* Opening Brief at 17-18.

Second, as explained in Defendants' Post-Trial Brief, under federal law and the terms of the Air Permit itself, the Air Permit does not constitute property. Opening Brief at ¶ 14.

Third, although the Trustee argues that his expert Nicolas Serieys valued the Air Permit according to the "Cost Approach," *see* Trustee's Br. at ¶ 54, Mr. Serieys's analysis fails to comply with even the most rudimentary requirements of the Cost Approach, which would have included making deductions for depreciation, functional obsolescence, and economic obsolescence of the

---

[10] Although the Trustee argues that he designated expert Mark Berkman "to testify regarding the value of the EOF Air Permit on a standalone basis if (instead of Defendants taking it), the EOF had been permanently shut down and the EOF Air Permit cancelled and sold as Emission Reduction Credits ("ERCs") in the market," Trustee's Br. at 26, Mr. Berkman offered no such testimony. He testified about what he thought the ERCs were hypothetically worth, but never testified that **ERC valuation** was a proxy for **Air Permit valuation**. 3/9/2022 Trial Tr. at 11:20 – 22 (Berkman Test.). The Trustee is again attempting to use argument as a substitute for evidence.

7

existing permit. 3/8/2022 Trial Tr. at 226:17 – 24 (Serieys Test.). Instead, he calculated only the "cost of replacement." *Id*. at 226:19.

Finally, the Trustee's approach to the Air Permit/ERC valuation is inconsistent with the Trustee's own logic. With respect to the EOF tangible property, the Trustee repeatedly states that the "proper" measure of value is FRV, not FMV. *See* Trustee's Br. at ¶¶ 14, 17. However, the Trustee inexplicably switches theories for the Air Permit, and instead argues that the proper value of the Air Permit is "on a standalone basis in terms of its replacement cost" or "on a standalone basis [by valuing] the emission reduction credits that could be obtained for cancelling the permit." Trustee's Br. at ¶ 54. It is undisputed that the SLC's operation of the EOF under the Air Permit is temporary, and it will be returned to the Trustee at the completion of the P&A. 3/8/2022 Trial Tr. at 189:4 – 10; 220:3-7 (Serieys Test.).

### IV.     The Trustee's Damages Case Would Create a Windfall.

At a very basic level, the Trustee's Post-Trial Brief has not shown that the Trust is in a worse position now than it was before the SLC entered onto the EOF. Instead, the Trustee assumes harm and ignores that the evidence shows that the Trust actually benefitted from the over $25 million the SLC has spent in operating the EOF.

### V.      The Trustee Misconstrues Defendants' Argument Regarding Remediation Costs.

The Trustee suggests that Defendants contend that remediation costs to clean up the EOF should be deducted from any just compensation the Court may award. *See* Trustee's Brief at ¶ 76. That is not Defendants' argument. What Defendants contend is that, because the Trustee's FRV calculations ostensibly are derived from FMV, one must consider all factors impacting FMV (including to account for decommissioning and remediation costs), before deriving FRV.

Ignoring decommissioning and remediation costs overstates FMV and thus overstates FRV.[11]

## VI. The Trustee is Not Entitled to Attorney's Fees.

In his brief, the Trustee makes a conclusory argument that if judgment were to be rendered for the Trustee on his inverse condemnation claim, the Trustee would be entitled under California law to fees, costs, and interest. *See* Trustee's Brief at ¶ 15. But the Trustee has not shown that California's exception to the American Rule would apply in this federal bankruptcy court, nor could he. The Trustee chose to bring this suit in bankruptcy court rather than in California state court, and in so doing, forfeited any attorney fee and cost award under Cal. Code Civ. Pro. § 1036. *Tilem v. City of Los Angeles*, 142 Cal.App.3d 694, 711 (1983) (refusing to award fees in a state court inverse condemnation action for a related § 1983 case brought in federal court because "A review of those portions of eminent domain law providing for recovery of litigation expenses makes clear that the Legislature intended to allow recovery only for actions brought in state court.")[12] The case law and principles suggesting that a federal court should apply state exceptions to the American Rule derive from diversity cases, in which a federal court is, "in effect, only another court of the State." *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 56 n.8 (3d Cir. 1977) (quoting *Guar. Tr. Co. v. York*, 326 U.S. 99, 108-09 (1945) at n. 8) (interpreting *Erie* and its progeny and concluding that federal courts sitting in diversity should apply state rules concerning the award of attorney fees). This is not a diversity case; this Court has held that it has federal law jurisdiction over the Trustee's claims.  Courts in this district have held that when federal court jurisdiction is not based on diversity, federal rules govern attorney fee awards. *See In re Impinj, Inc. Deriv. Litig.*, 2021 U.S. Dist. LEXIS 224687, at *14 (D. Del. Nov. 22, 2021).

Even if there were support for the notion that California's fee shifting provision could apply in a non-diversity case if it were deemed to be "substantive" and not "procedural," the provision

---

[11] Remediation costs cannot be ignored. It is axiomatic that the cost of environmental remediation and removal of equipment from a property impacts its FMV and, thus, in cases such as this, FRV. *See* Todd S. Davis, Brownfields: A Comprehensive Guide to Redeveloping Contaminated Property § 6 (2d Ed. 2002); Ex. D-2 [Defendants' Brief Opposing MIL Re Remediation and Decommissioning], incorporated herein by reference.
[12] *See also Salton Bay Marina v. Imperial Irrigation Dist.*, 172 Cal.App.3d 914, 958 (1984) (refusing to allow costs for an inverse condemnation claim brought in federal court, parallel to a state court proceeding).

on which the Trustee relies for his attorney fee demand is a section of the California **Code of Civil Procedure**, which alone is "strong evidence" that the provision is procedural in nature. *See Barnes v. Sun Chem. Corp.*, 164 F. Supp. 3d 994, 1001 (W.D. Mich. 2016). Moreover, according to California law, attorney's fees are considered procedural rather than substantive. *See Rosenbank Rd. Med. Servs. v. Govindarajan*, 2018 Cal. Super. LEXIS 6924, *2-3 (Cal. Super. Ct. June 14, 2018) ("Generally, attorney's fees are considered procedural rather than substantive under California law.").[13]

### VII. Award of Interest.

California law provides that "[i]n any inverse condemnation proceeding . . . interest shall be computed as prescribed by [Cal. Civ. Proc.] section 1268.350." Cal. Civ. Proc. § 1268.311. That section provides for interest at the "apportionment rate" (available at sco.ca.gov/ard_yield_rates.html, or from Defendants) which is the rate of earnings on the California Surplus Money Investment Fund. Absent "a compelling showing" that other rates are more appropriate, California courts hold that the statutory rate is to be applied. *People ex rel. Dept. of Trans. v. Diversified Props. Co*., 14 Cal. App. 4th 429, 451 (1993).[14]

### CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court enter an order and judgement in their favor in this case.

---

[13] If regardless of these arguments, the Court were to decide that § 1036 applies to the Trustee's claim, per the plain language of the provision the Court only could award fees if the Trustee proves harm and damages and the court actually "award[s] compensation." Cal Civ. Proc. § 1036. And, as noted in Defendants' Opening Brief, any award of fees would need to be commensurate with the damages award. Opening Brief at 29. A "reduced fee award is appropriate when a claimant achieves only limited success." *Sokolow v. Cty. of San Mateo*, 213 Cal. App. 3d 231, 249 (1989); *accord Chavez v. City of L.A.*, 47 Cal. 4th 970, 989 (2010); *Best v. California Apprenticeship Council* 193 Cal. App. 3d 1448, 1471 (1987).

[14] While *Redevelopment Agency v. Gilmore*, 38 Cal. 3d 790 (1985) held, in the context of a high interest environment, that interest cannot be limited to the statutory rate, the period since 2017 has not been a period of high interest, and in any event, the alternative rate the court applied were rates paid on money market obligations. *Id*., at 807.

| | |
|---|---|
| Dated: May 31, 2022 | Respectfully submitted, |
| Rob Bonta<br>Attorney General of California<br>Christina Bull Arndt<br>Supervising Deputy Attorney General<br>Mitchell E. Rishe<br>Deputy Attorney General<br>OFFICE OF THE CALIFORNIA ATTORNEY GENERAL<br>300 S. Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>Telephone: (213) 269-6394<br>Email: Mitchell.Rishe@doj.ca.gov<br><br>*/s/ Edward K.Black*<br>Edward K. Black (DE No. 5302)<br>Deputy Attorney General<br>DELAWARE DEPARTMENT OF JUSTICE<br>820 North French Street, C600<br>Wilmington, Delaware 19801<br>Telephone: (302) 577-4209<br>Email: edward.black@delaware.gov<br><br>*Counsel for the State of California* | TROUTMAN PEPPER HAMILTON SANDERS LLP<br><br>*/s/ David M. Fournier*<br>David M. Fournier (DE No. 2812)<br>Joanna J. Cline (DE No. 5873)<br>Kenneth A. Listwak (DE No. 6300)<br>Hercules Plaza<br>1313 Market Street, Suite 5100<br>Wilmington, DE 19801<br>Telephone: (302) 777-6500<br>Email: david.fournier@troutman.com<br>　　　　joanna.cline@troutman.com<br>　　　　ken.listwak@troutman.com<br><br>　　　　-and-<br><br>Steven S. Rosenthal (admitted *pro hac vice*)<br>Marc S. Cohen (admitted *pro hac vice*)<br>J.D. Taliaferro (admitted *pro hac vice*)<br>Alicia M. Clough (admitted *pro hac vice*)<br>LOEB & LOEB LLP<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA 90067<br>Telephone: (310) 788-2000<br>Email: srosenthal@loeb.com<br>　　　　mscohen@loeb.com<br>　　　　jtaliaferro@loeb.com<br>　　　　aclough@loeb.com<br><br>*Co-Counsel to California State Lands Commission* |